AMERICA WEST AIRLINES, INC., Edward R. Beauvais and Michael J. Conway, Plaintiffs,

v.

NATIONAL MEDIATION BOARD, Defendant.

No. CIV 90–925 PHX EHC.

United States District Court, D. Arizona.

July 20, 1990.

Robert Siegel, Dan M. Durrant, for plaintiffs.

Scott Simpson, Ronald M. Etters, for defendant.

## MEMORANDUM OPINION (PRELIMINARY INJUNCTION)

CARROLL, District Judge.

On September 9, 1988, the Association of Flight Attendants (AFA), a labor union, filed an application with the National Mediation Board (the Board) pursuant to The Railway Labor Act (RLA), 45 U.S.C. § 152, Ninth alleging a representation dispute among flight attendants at America West. On January 5, 1989, the Board ordered an election among the flight attendants. The ballots were mailed to employees on January 17, 1989, and the count was scheduled for February 15, 1989.[1] 301 of the 1193 eligible employees voted in favor of AFA representation. Two days prior to the ballot count AFA filed a "Motion for Board Determination of Carrier Interference".

---

**1.** America West does not have employees that only perform flight attendant duties. The airline employees are a group of fully cross-trained Customer Service Representatives. For purposes of the election "flight attendants" were defined as employees who during the period between July 1, 1988 and September 30, 1988 had performed more than 50 percent of their duties in-flight.

In its motion AFA alleged that America West: increased benefits during the organizing campaigns, did not post the Board's official notices of election, distributed literature critical of AFA and through coercion deterred employees from voting for AFA. Exhibits and affidavits were submitted in support of AFA contentions. America West filed an opposition to the motion also supported by exhibits and affidavits.

On January 12, 1990 the Board issued Findings Upon Investigation—Order. *America West Airlines. Inc.*, 17 N.M.B. 79 (1990). The Board determined that America West did post notices of election and the evidence of coercive speeches and statements was inconclusive. However, the Board found that by the " 'totality' of its conduct" America West "improperly interfered with, influenced, and coerced its flight attendants in their freedom of choice" in violation of 45 U.S.C. § 152, thus tainting "the laboratory conditions which the Board seeks to promote in representation elections".

The Board determined that announcement of work rule changes, implementation of increased layover benefits on January 1, 1989 and the timing of the profit-sharing party with Edward Beauvais and Michael Conway (chairman and president, respectively) and letters criticizing the AFA, contaminated the election process.

The Board authorized a re-run election. Furthermore, the Board ordered that a special "Notice to All Employees" (Notice) be distributed along with the ballot materials to each eligible voter. The Special Notice provides in pertinent part:

After an investigation conducted by the National Mediation Board in which the Carrier and the Union had the opportunity to present statements and evidence, the National Mediation Board found that the Carrier's conduct, taken as a whole, improperly interfered with employees' choice of representative under Section 2, Ninth, of the Act. It is unlawful for a carrier to interfere with the organization of its employees.

The Notice also sets forth the text of 45 U.S.C. § 152, Fourth. This same section is also referenced in the Notice of Election.

On January 25, 1990, America West submitted a motion for reconsideration. America West requested an evidentiary hearing or at the "very least" a modification of the notice including a statement that America West disagreed with the finding of illegal conduct. The motion for reconsideration was denied by the Board on July 12, 1990.

Plaintiffs seek an injunction prohibiting the Board from distributing the special Notice. Plaintiffs contend that: this Court has jurisdiction to enjoin distribution of the Board's proposed Notice, because distribution of the Notice without a hearing would violate their due process rights, the 1st Amendment and the Railway Labor Act.

Defendant asserts that this Court lacks subject matter jurisdiction on the grounds that the plaintiffs' claims are not ripe for review, there is no standing and the Board's election procedures are not subject to review.

A hearing (oral argument) was held before this Court on July 10, 1990. On July 17, 1990, the date which the Board was to mail the ballots and Notice in question, this Court issued an Order, enjoining the Board from disseminating the special Notice in its present form. The Order did not enjoin the holding of the election as scheduled.

*Jurisdiction*

It is unquestionable that the courts have extremely limited review of the Board's actions. One Circuit has held that Judicial review of National Mediation Board decisions is one of the narrowest (" 'a peek at the merits' ") known to the law. *International Association of Machinists v. Trans World Airlines, Inc.*, 839 F.2d 809, 811–812 (D.C.Cir.1988).

The Supreme Court has held that the RLA precludes review of the Board's certification of a collective bargaining representative. *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

In *Brotherhood of Railway and Steamship Clerks v. Association for the Benefit of Non–Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) United Airlines challenged the Board's voting class determination and selection of the form of ballot. It was held that the Board's action is reviewable only to the extent that it bears on the question of whether it performed the statutory duty to investigate the dispute. *Id.* at 1198. Furthermore, when addressing the ballot form issue the Supreme Court concluded that the Board's selection of a ballot is not subject to judicial review where there is no showing that it has acted in excess of its statutory scheme. *Id.* at 1202.[2]

■ Courts may intervene in a representation dispute only to correct a constitutional violation or a gross violation of the RLA. *Long Island Railroad Co. v. National Mediation Board*, 703 F.2d 680, 681 (2nd Cir.1983).

■ Accordingly, this Court has jurisdiction to ascertain whether the determined action of the Board, i.e. dissemination of the special Notice in its present form, declaring the actions of America West unlawful, violates the carrier's constitutional rights or is a violation of 15 U.S.C. § 151 et seq.

*Standing*

■ Essentially it is defendants' contention that the plaintiffs fail to allege a sufficient or substantial injury. Defendant further alleges that plaintiffs cannot bring this action until after any election when any damage from the special notice may be determined.

The Board concedes in its motion to dismiss that it does not have authority to determine that America West is guilty of a 45 U.S.C. § 152, Fourth violation.

The total effects of this Notice on the election process would be difficult, if not impossible to quantify. Further, extensive litigation would ensue, and a final determination of the issue would be delayed inter-

minably. This is not the type of a case where it is appropriate to have a verdict now and the trial later. The issues involved in this case and the election itself are too important for that. Plaintiff, America West, has standing to bring this suit.

I conclude that review of the proposed action of the Board after the election would foreclose any effective relief to plaintiffs should their claims have merit.

*Ripeness*

Defendant asserts that America West's claim is not ripe for review.

■ The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the parties". *Pac. Gas & Elec. v. St. Energy Resources Conserv.*, 461 U.S. 190, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983). The question of ripeness turns on the "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration". *Pac. Gas & Elec.*, 103 S.Ct. at 1720 (1983) citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Trustees for Alaska v. Hodel*, 806 F.2d 1378, 1381 (9th Cir.1986). A claim is fit for decision if the issues raised are primarily legal and do not require further factual development and the challenged action is final. *Trustees for Alaska*, 806 F.2d at 1381 (1986).

■ The issues raised by this action are primarily if not entirely legal: whether the Board's sending of the Notice to Employees violates the plaintiff's constitutional rights and the RLA. There are no relevant disputed facts.

Secondly, further factual development will not help this Court decide whether the language contained in the Notice is viola-

---

**2.** See Justice Stewart's dissent for a thoughtful discussion why the form of ballot is an appropriate subject for judicial review—a proposition with which I fully agree.

tive of the Constitution or exceeds the authority of the Board. This Court must decide whether the Board's representation that America West has acted unlawfully is appropriate. There is no need for any further facts as to whether America West's actions were unlawful because that is not a determination for the Board or this Court to make. Abstaining from any decision until after the Board has distributed the Notice in question would not assist this Court in deciding whether such action was constitutional or within the strictures of the RLA.[3]

Lastly, the challenged action of the Board is final for the purposes of this review. The Board has ordered that the Notice be sent to America West employees along with the representation ballots and notice of election. The Board denied America West's motion to reconsider its order. Accordingly, the plaintiffs could seek review of the proposed action in no other forum but this Court. As stated above, the actual mailing of the Notice would do nothing to assist the Court's eventual ruling. Waiting for the distribution of the Notice would merely deprive plaintiffs of an adequate remedy if it is determined that the proposed action of the Board exceeds its authority. The disputed portions of the Notice have implications for America West—both with respect to relations with employees and its business reputation—which go well beyond the representation investigation.[4]

The parties are not contesting abstract issues but rather issues of substantial constitutional dimensions. Plaintiffs would have no meaningful remedy for the violation of their rights; if the Board's action is found to be inappropriate it can be presumed that the contamination of the hypothetical "laboratory" conditions would require a third representation election.

---

3. See *New York State Ophthalmological Soc. v. Bowen*, 854 F.2d 1379, 1386–1387 (D.C.Cir.1988) (Evaluation of the constitutionality of agency guidelines or statutory provisions will not be aided by waiting until agency action has assumed a more final or concrete form.)

For the above stated reasons the issues presented in this action are ripe for determination.

*Preliminary Injunction*

■ A party requesting a preliminary injunction must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits are raised and the balance of hardships tips sharply in its favor. This test is to be viewed as a continuum. *Johnson Controls v. Phoenix Control Systems*, 886 F.2d 1173, 1174 (9th Cir.1989) citing *Dumas v. Gommerman*, 865 F.2d 1093, 1095 (9th Cir.1989).

I found, in the Order granting a preliminary injunction, America West has demonstrated compliance with both of these standards.

*Violation of RLA*

Plaintiffs claim that the Board's action is contrary to the Railway Labor Act.

The Supreme Court has held:

The major objective of the Railway Labor Act, (citation omitted) was the 'avoidance of industrial strife, by conference between the authorized representatives of employer and employee' ... It authorized the National Mediation Board, upon request, to investigate disputes over representation; to 'designate' those who were affected; to use a secret ballot or any other appropriate means of ascertaining the choice of employees; to establish rules governing elections and to certify the representatives so chosen to represent the employees in negotiations.

*Brotherhood of Railway and Steamship Clerks*, 85 S.Ct. at 1196 (1965). This Court has serious concerns that the publication of the special notice containing the above noted language exceeds the power and authority of the Board.

■ An agency may not confer power on itself. *Louisiana Public Service Com'n v. F.C.C.*, 476 U.S. 355, 106 S.Ct. 1890, 1902,

---

4. See: *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960) respecting due process implications of this procedure.

90 L.Ed.2d 369 (1986). Furthermore an agency's power is no greater than that delegated by Congress. *Lyng v. Payne*, 476 U.S. 926, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986).

■ The unspoken supposition by the Board is that it can violate what is characterized as the "laboratory conditions" necessary for a fair election, by issuing a notice (separate from the Ballot and Notice of Election for a re-run election) calling the attention of the carrier's employees to the Board's Finding/Order (however it chooses to characterize its investigative conclusion) of carrier interference.

The theoretical justifications for such a notice are two-fold, as expressed by the Board's Counsel at the July 10th hearing:

> One of the purposes, and only one of them, is the one that's been discussed so far today. And that is that the notice is intended partly to make sure that it's not more likely that employees receiving this ballot aren't more likely to throw it away, or let it lie for more than 30 days that they have, than it would otherwise be.

Tr. p. 26.

This is an oblique way of saying that the purpose of the Notice is to call attention to the finding of carrier interference in the prior election and to cause the employees to respond favorably to union representation. Such a practice is only proper if as held in *International Association of Machinists v. Trans World Airlines*, 839 F.2d 809, 812 (D.C.Circuit 1988) the Board is not required to be "neutral" (impartial) in an investigation and/or election, a proposition with which I disagree.[5]

The appropriate position of the Board in a representation investigation was stated as follows in *Switchmen's Union:*

The function of the Board under § 2, Ninth is more the function of a referee . . .

64 S.Ct. at p. 98 (1943).

This requirement of impartiality was noted as well in Justice Reed's dissent in *Switchmen's Union:*

> . . . It was only natural therefore that Congress should assume that where its own creature, the Mediation Board, was charged with interference with the right of employees by a misconstruction of the statute under which it existed, that error of law would be subject to judicial examination to determine the correct meaning.

*Id.* 64 S.Ct. at 105.

This requirement of neutrality was expressed quite clearly in *Brotherhood of Railway and Steamship Clerks:*

> . . . The Board, as we noted in Switchman's Union, performs the 'function of a referee'. It does not select one organization or another; it simply investigates, defines scope of the electorate, holds the election and certifies the winner . . .

85 S.Ct. 1192, 1201 (1965).

The RLA, and the Supreme Court decisions reviewing Board activities make it abundantly clear that the Board does not have an adversarial-partisan role to play in a § 2, Ninth investigation. Again, turning to *Brotherhood of Railway and Steamship Clerks:*

> We should note at the outset that the Board's duty to investigate is a duty to make such investigations as the nature of the case requires. *An investigation is "essentially informal, not adversary; it is not required to take an particular form . . .*

*Id.* (emphasis added).

The second objective of the notice—as stated by counsel—is to "cleanse, to neutralize" the carriers influence in the earlier election. Tr. p. 27.[6] It is difficult to per-

---

**5.** No authority is cited for this rather startling proposition. All relevant case law—common sense and the provisions of 42 U.S.C. § 152—are to the contrary.

**6.** Here the prior election was held approximately eighteen months earlier, a period of time arguably sufficient to attenuate any carrier interference found to exist in that election. cf. *International Brd. of Team. v. Brotherhood of Rail, A & S CL.*, 402 F.2d 196, 199 (D.C.Cir.1968) (Passage of sufficient time can fully attenuate prior activities).

ceive a cleansing effect, where the notice invites the carrier's employees to evaluate the Board's determination of previous interference. In actuality the second objective is merely a rescript of the first.

The problem here with the form of the Notice is that it overstates, if not directly, by clear inference, that the Board has conducted an adversarial investigation ("The opportunity to present statements and evidence") and found through that process that the carrier had "unlawful[ly]" interfered with the organization of its employees. The Board did neither of those things; it has no jurisdiction to make either an adjudicative decision or to find that a carrier acted unlawfully when it did the things that caused the Board to order a re-run election.

The Board has an obdurate determination to persist in what ever form of notice it proposes, irrespective of legal reasons why some revision is appropriate. In part this seems to result from the Board's view that a revision in the Notice gained by a carrier will be perceived as a demonstration of "power" by the carrier, and thus inappropriate. Tr. p. 43–44. This is bureaucratic paranoia in the extreme.

The Key Airline's notice, and the Board's order in that proceeding which required the carrier to both sign and mail the Board's notice was at issue before the United States District Court in Washington D.C., on June 29, 1989. Civ. No. 89–1769. The Board conceded that it could not require the carrier to mail or post the notice, thus mooting those aspects of its order. The Board also acquiesced in the carriers amending the notice to add the following qualification:

> By signing this notice Key does not admit that it improperly interfered with the employees' choice of representation under Section 2, 9th of the Act. Further Key does not agree that it has been given any true opportunity to rebut the allegations against it. For its most com-

plete reservations, you should read Key's request for reconsideration and its response to the order to show cause.

The Board has every right to conduct an *investigation,* in the manner it chooses, and to find whether or not an election or re-election is required. That terminates the investigative process. A notice that it has conducted an investigation and has ordered a re-run election, due to activities of the carrier that could have interfered with the employees' choice of representation, is consistent with its § 2, Ninth jurisdiction. It is only when the Board chooses to mischaracterize the nature of its investigation as an adjudicative proceeding or to cast the carrier's activities as unlawful,[7] that intervention of a court is justified; it is then that Board actions can be characterized as a constitutional violation or a gross violation of the RLA. *Long Island Railroad Co.,* 703 F.2d at 681 (1983).

A Notice of the Board's findings must be designed so that it does not itself influence or contaminate the "laboratory" conditions. Furthermore, any written determination of the Board must be consistent with its power and authority.

Serious questions have been raised which go to the merits of plaintiffs' claims that the Board has acted in violation of its statutory authority.

*Due Process*

The Constitution protects individuals and entities from proclamations, by government agencies, declaring them guilty of crimes when such guilt has not been established by the necessary criminal proceedings. The contested actions of the Board arguably give rise to a Due Process claim because the Notice implies that America West was found guilty of violating § 152 as charged by the AFA after an adjudicative proceeding was held when in fact neither assertion is correct.

*Conclusion*

Without even limited judicial review, the process and function of administrative

---

7. During the hearing counsel for the defense asserted that the term "unlawful" as used in the Notice did not connote a violation of 45 U.S.C. § 152 or any illegal activity. This contention is

not well taken by the Court. The Random House College Dictionary, Revised Edition (1982) defines unlawful as "not lawful; contrary to law; illegal".

agencies or entities can eventually become skewered. Here, the Notice to Employees, the refusal of the Board to accommodate any revision of the Notice or extension of time for the Court to review the procedure, and the evolution of power exercised by the Board, particularly in recent years, is reflective of this phenomenon.[8]

The case law illustrates the limited review to which the National Mediation Board has been subjected. Since 1943, courts have been hesitant to review the actions of the Board because Congress did not specifically authorize review. However, it is not suggested, nor can it reasonably be, that the Board may act in a manner which is violative of the Constitution or beyond the authority granted to it by Congress.

---

**8.** The Court notes that the Board took one year to issue its investigative findings and "Order".