AMERICA WEST AIRLINES, INC.;
Edward R. Beauvais;  Michael J.
Conway, Plaintiffs–Appellees,

v.

NATIONAL MEDIATION BOARD,
Defendant–Appellant.

No. 90–16337.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1991.

Decided July 7, 1992.

John S. Koppel, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert A. Siegel, O'Melveny and Myers, Los Angeles, Cal., for plaintiffs-appellees.

Before: TANG, and TROTT, Circuit Judges, and BREWSTER,* District Judge.

TANG, Circuit Judge:

The National Mediation Board ("Board") appeals the decision of the district court reported at 743 F.Supp. 693 (D.Ariz.1990) granting the motion of America West Airlines, Inc., ("America West" or "Carrier") for a preliminary injunction. The district court enjoined the Board from mailing a notice to America West employees indicating America West violated provisions of the Railway Labor Act, as amended, 45 U.S.C. §§ 151–188. The notice was to be sent in conjunction with a rerun representation election which the Board found necessary in light of America West's conduct prior to the original election. Because distribution of the proposed notice would be in excess of the Board's statutory authority, we affirm the ruling of the district court.

## FACTS AND PROCEDURAL BACKGROUND

This case arose when the Association of Flight Attendants ("AFA") filed an application with the Board pursuant to the Railway Labor Act, 45 U.S.C. § 152, Ninth, alleging a representation dispute among a "craft or class" of America West employees which the Board eventually defined as "Flight Attendants." *See In re Association of Flight Attendants*, 17 N.M.B. 79, 79–80 (1990).[1] Under section 152, Ninth, the Board is obligated in such instances "to investigate [the] dispute and to certify to both parties ... the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier."

In carrying out its investigation of the dispute at America West, the Board ordered a secret ballot election, *see* 17 N.M.B. at 80, as authorized by statute:

In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier.

45 U.S.C. § 152, Ninth (excerpt).[2]

Following this first election, the AFA filed with the Board a "Motion for Board Determination of Carrier Interference." 17 N.M.B. at 80. In response, the Board concluded that "the carrier has improperly interfered with, influenced, and coerced its flight attendants in their freedom of choice, by the 'totality' of its conduct." *Id.* at 98. In reaching this conclusion, the Board cited "the timing of benefits, the presence of [America West Chairman and Chief Executive Officer] Beauvais and [America West President and Chief Operating Officer] Conway at [a] profit-sharing party, as well as the timing of the party, [and] the letters from Beauvais and Conway with their criticism of AFA." *Id.* at 102; *see also* Northrup, *supra* note 1, at 499–500 (discussing Board's decision).

In arriving at this conclusion, the Board apparently considered the AFA's motion, America West's written reply, and various affidavits, declarations, and exhibits accom-

---

* Honorable Rudi M. Brewster, United States District Court Judge for the Southern District of California, sitting by designation.

1. For a description of the Railway Labor Act, and the Board's role thereunder, see generally Herbert R. Northrup, *The Railway Labor Act— Time for Repeal?*, 13 Harv.J.L. & Pub.Pol'y 441 (1990). While the Board might be equated to the National Labor Relations Board in a few respects, the parallel is quite limited. *See id.* at 445. Professor Northrup makes the following generalizations: "Unlike the NLRB, ... the NMB has no statutory authority to adjudicate unfair labor practices, it has no procedure for formal hearings before administrative law judges, and it is not subject to judicial review." *Id.* at 500. Consequently, in proscribing unfair labor practices by air and rail carriers, "the court system is utilized as a substitute for an administrative agency such as the NLRB because the NMB has no authority to handle unfair labor practices (although it certainly attempts to restrict employer action in representation cases)." *Id.* at 505–06.

2. The Board's decision ordering the first election is reported at 16 N.M.B. 135 (1989).

panying the parties' arguments. *See* 17 N.M.B. at 80. The AFA also filed a request for a particular kind of ballot to be used in a second election, and the Carrier filed a "position statement" opposing the request. *See id.* Despite America West's persistence in requesting a hearing on the allegation of election interference, *see America West Airlines*, 17 N.M.B. 226, 228 (1990), no hearing was held nor was America West's request ever discussed by the Board in its published decisions.

Having concluded that America West interfered with the first election, the Board ordered a rerun election. 17 N.M.B. at 102. The Board further ordered that "a special 'Notice to All Employees' ... be distributed along with the ballot materials to each eligible voter in these elections." *Id.* The notice states in pertinent part:

NOTICE TO ALL EMPLOYEES

PURSUANT TO FINDINGS UPON INVESTIGATION AND ORDER · OF THE NATIONAL MEDIATION BOARD AND IN ORDER TO EFFECTUATE THE POLICIES OF THE RAILWAY LABOR ACT, AS AMENDED, ALL EMPLOYEES ARE HEREBY NOTIFIED THAT:

After an investigation conducted by the National Mediation Board in which the Carrier and the Union had the opportunity to present statements and evidence, the National Mediation Board found that the Carrier's conduct, taken as a whole, improperly interfered with employees' choice of representative under Section 2, Ninth, of the Act. It is unlawful for a carrier to interfere with the organization of its employees.·

Section 2, Fourth of the Act, 45 U.S.C. § 152, allows employees the right to select representatives without carrier influence or interference....

....

All employees are free to express their desire to be represented by a labor organization or remain unrepresented. The Carrier is not permitted to influence, in-

terfere or coerce ·employees in any manner in an effort to induce them to participate or refrain from participating in the upcoming elections.

17 N.M.B. at 104–05. After the Board rejected America West's motion for reconsideration, *see·* 17 N.M.B: at 234–35, the Carrier and two of its officers filed this action seeking to enjoin the Board's use of the notice.[3]

In the district court, America West argued that, while the proposed rerun election in itself was a permissible investigatory tool, the notice as proposed would be in excess of the Board's investigative authority. The Carrier emphasized that the Board was attempting to usurp remedial powers similar to those with which the National Labor Relations Board is endowed.· America West also raised arguments under the First and Fifth Amendments. 743 F.Supp. at 695.·

In response, the Board argued that its notice·was a permissible means of conducting the investigation authorized under section 152, Ninth, particularly in light of the statute's mandate that the Board "shall *insure* the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier" (emphasis added). The Board also emphasized the extremely narrow scope of judicial review to which the Board is subject.

The district court granted the motion for a preliminary injunction in an unpublished order accompanied by a published opinion. In barring distribution of the Board's notice, the district court reasoned:

The problem here with the form of the Notice is that it overstates, if not directly, by clear inference, that·the Board has conducted an adversarial investigation ("The opportunity to present statements and evidence") and found through that process that the carrier had "unlawful[ly]" interfered with the organization of its employees. The Board did neither of those things; it has no jurisdiction to make either an adjudicative decision or to

---

3. America West does not seek to enjoin the rerun election itself, or other aspects of the

Board's investigation of the representation dispute.

find that a carrier acted unlawfully when it did the things that caused the Board to order a re-run election.

. . . .

The Board has every right to conduct an *investigation*, in the manner it chooses, and to find whether or not an election or re-election is required. That terminates the investigative process. A notice that it has conducted an investigation and has ordered a re-run election, due to activities of the carrier that *could have* interfered with the employees' choice of representation, is consistent with its § 2, Ninth jurisdiction. [Emphasis added.] It is only when the Board chooses to mischaracterize the nature of its investigation as an adjudicative proceeding or to cast the carrier's activities as unlawful, that intervention of a court is justified; it is then that Board actions can be characterized as a constitutional violation or a gross violation of the RLA.

743 F.Supp. at 699 (footnote and citation omitted).[4]

The Board timely appeals from the district court's order; proceedings in the lower court have been stayed pending the outcome of this appeal.

## DISCUSSION

### I. Jurisdiction

The Board frames its appeal primarily as a challenge to the subject matter jurisdiction of the district court. The leading case holding that the federal courts lack power to review Board decisions in representation matters is *Switchmen's Union v. National*

*Mediation Bd.*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

In *Switchmen's*, the Supreme Court was presented with a challenge to the Board's certification of a particular union. *Id.* at 299, 64 S.Ct. at 96. A rival union charged that the Board's determination of the appropriate "craft or class" was improper. *Id.* The Court concluded that the federal courts "did not have the power to review the action of the National Mediation Board in issuing the certificate." *Id.* at 300, 64 S.Ct. at 96. In so concluding, the Court reasoned that Congress had afforded protection of the statutory right to collective bargaining by creating the Board; in the absence of evidence of a contrary intent, Congress's decision not to provide for judicial review of Board decisions is controlling. *Id.* at 300–06, 64 S.Ct. at 96–100. As a result, "[j]udicial review of [Board] decisions is extraordinarily limited." *Professional Cabin Crew Ass'n v. National Mediation Bd.*, 872 F.2d 456, 459 (D.C.Cir.), *cert. denied*, 493 U.S. 974, 110 S.Ct. 497, 107 L.Ed.2d 500 (1989).

In arriving at its decision, the *Switchmen's* Court emphasized that "the type of problem involved and the history of the statute in question become highly relevant in determining whether judicial review may be nonetheless supplied." 320 U.S. at 301, 64 S.Ct. at 97; *see also id.* at 302, 64 S.Ct. at 97 ("the history of § 2, Ninth is highly relevant"). In reviewing the statute in question here, and the Board's power thereunder, the Court observed:

The Mediation Board makes no "order". And its only ultimate finding of fact is the certificate. The function of the

---

4. The Board has consistently rejected America West's requests to modify the language of the notice. *See* 17 N.M.B. at 234 & n. 4. Regarding these proposed revisions to the notice, counsel for America West stated at oral argument before the district court that

in terms of the form of the notice, I think America West would, on balance, accept the Court's comments earlier on. . . . So that [the notice] would say, "The Board has found that the carrier's conduct, arguably, improperly interfered," and that this whole text would be included in one notice. I think that [would go] a long way to mollifying our constitutional concerns, Your Honor.

The Board refused to agree to this modification even though the district court's order indicates that such a modification would permit distribution of the notice. In a very similar case, however, the Board did modify its proposed notice in response to objections raised by the carrier. *See Key Airlines, Inc. v. National Mediation Bd.*, 745 F.Supp. 749, 750–51 (D.D.C.1990). The modifications, which indicated that the carrier disagreed with the Board's conclusions, rendered the carrier's challenge to the notice to be "wholly without merit." *Id.* at 752.

Board under § 2, Ninth is more the function of a referee. To this decision of the referee Congress has added a command enforcible by judicial decree. But the "command" is that "of the statute, not of the Board."

. . . .

... Under this Act Congress did not give the Board discretion to take or withhold action, to grant or deny relief. It gave it no enforcement functions. It was to find the fact and then cease. Congress prescribed the command.... [T]he intent seems plain—the dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals.

*Id.* at 304–05, 64 S.Ct. at 99 (citation omitted). Thus, so long as the Board is acting with the purpose of "find[ing] the fact" as to who is the employees' representative, the courts are deprived of jurisdiction to review Board decisions. *See also Air Line Pilots Ass'n, Int'l v. Transamerica Airlines, Inc.,* 817 F.2d 510, 515 n. 3 (9th Cir.), *cert. denied,* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987).

On the other hand, when the Board acts in excess of its statutory authority, judicial review may be available. *E.g., Hunter v. National Mediation Bd.,* 754 F.2d 1496, 1498 (9th Cir.1985).[5] As the Board concedes, it has no authority to adjudicate unfair labor practices. America West argues accordingly that the proposed notice amounts to an unauthorized remedy for an unfair labor practice. We are not persuaded. Of particular importance here is

the fact that the Board itself intends to distribute the notice with the ballot for the rerun election. By contrast, when the NLRB intends that a notice be posted or sent to employees to remedy an unfair labor practice, it orders the employer to publish the notice. *See* 12 Empl.Coordinator (Research Inst.Am.) 128,004 (Feb. 20, 1989) (citing *NLRB v. Express Pub. Co.,* 312 U.S. 426, 438, 61 S.Ct. 693, 700, 85 L.Ed. 930 (1941)); Kenneth C. McGuiness & Jeffery A. Norris, *How to Take a Case Before the NLRB* 409 (5th ed. 1986) ("McGuiness & Norris").[6] Consequently, the Board's characterization of the proposed notice as an investigatory tool, rather than a remedy for an unfair labor practice, is correct. However, the Board errs in its assumption that its discretion in choosing the means by which to conduct a representation investigation is completely unfettered.

The Board contends the notice is, like the rerun election itself, an investigatory tool necessary to "insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier," 45 U.S.C. § 152, Ninth. As such, the Board contends its proposed notice is identical in nature to the various types of ballots used by the Board, which America West concedes are unreviewable. Thus, the Board argues that its decision to employ the notice is not reviewable as being in excess of statutory authority.

The history of the Railway Labor Act belies the Board's argument. In *Chicago & N.W. Ry. Co. v. United Transp. Union,* 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971), the Supreme Court was faced with

---

5. Contrary to the Board's argument, we believe it is unnecessary to show *both* that the Board acted in excess of its authority *and* that it acted contrary to a specific statutory provision, to obtain judicial review. It is true, however, that something more than an act in excess of authority is necessary before judicial review is available. *See Board of Governors v. MCorp. Fin.,* —— U.S. ——, 112 S.Ct. 459, 465–66, 116 L.Ed.2d 358 (1991). In the present case, we think the potential for irreparable harm to the reputation among employees of America West and its officers posed by distribution of the Board's notice justifies our exercise of jurisdiction at this stage of Board proceedings. *Cf. id.* 112 S.Ct. at 466 (availability of "meaningful and adequate op-

portunity for judicial review" upon completion of administrative proceedings precludes federal judicial intervention during course of proceedings).

6. Federal courts have refused to enforce NLRB remedial orders in which employers are made to admit past unfair labor practices. *See Express Pub. Co.,* 312 U.S. at 438–39, 61 S.Ct. at 701 (citing cases). Thus, the notice proposed by the Board in this case probably would not pass muster as an unfair labor practice remedy. *Cf.* McGuiness & Norris 411–17 (reproducing form notices used by NLRB); *id.* § 17.14 (discussing NLRB notices).

the question whether federal courts, as opposed to the Board, should hear cases in which one party subject to the Railway Labor Act accuses another of violating 45 U.S.C. § 152, First. 402 U.S. at 572, 91 S.Ct. at 1733. This part of the Act imposes a duty to "make and maintain" collective bargaining agreements. *See id.* at 571, 91 S.Ct. at 1732. The Court's resolution of this issue is most instructive to the present case:

Finally, we must consider the Court of Appeals' position that the question whether a party had exerted every reasonable effort was committed by the Railway Labor Act to the National Mediation Board rather than to the courts. We believe that the legislative history of the Railway Labor Act rather plainly disproves this contention. It is commonplace that the 1926 Railway Labor Act was enacted because of dissatisfaction with the 1920 Transportation Act, and particularly with the performance of the Railroad Labor Board. *While there were many causes of this dissatisfaction, one of the most prominent was that because of its adjudicatory functions, the Board effectively lost any influence in*

*attempting to settle disputes.* Throughout the hearings on the bill which became the 1926 Act there are repeated expressions of concern that *the National Mediation Board should retain no adjudicatory function,* so that it might maintain the confidence of both parties.

402 U.S. at 579–80, 91 S.Ct. at 1736 (footnote omitted) (emphasis added); *accord Regional Airline Pilots Ass'n v. Wings W. Airlines, Inc.,* 915 F.2d 1399, 1402 (9th Cir.1990) ("Congress took special precautions ... so as not to jeopardize the Board's primary function as a neutral in the mediation process"), *cert. denied,* —— U.S. ——, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991); *see Ruby v. American Airlines, Inc.,* 323 F.2d 248, 256 (2d Cir.1963) (Friendly, J.) ("For the courts to require the Mediation Board to transform itself into an adjudicative and prosecutorial agency like the N.L.R.B. ... would distort the entire Congressional scheme."), *cert. denied,* 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964); *see also Switchmen's,* 320 U.S. at 302–03, 64 S.Ct. at 98 (providing additional legislative history concerning 1934 amendments to Railway Labor Act).[7]

---

7. In *Chicago & North Western,* a 1971 case, the Supreme Court saw fit to rely on legislative history dating from 1926, even though the nature of the National Mediation Board changed when the Railway Labor Act was amended in 1934. *See* Northrup, *supra* note 1, at 445–46. The change included the addition of 45 U.S.C. § 152, Ninth, *see id.* at 478–79, the provision which lies at the heart of the present case. Despite this development, we believe the purely investigatory nature of the Board did not change with the 1934 amendment—at least insofar as the present case is concerned.

Although language to the contrary appears in a companion case to *Switchmen's, General Comm. v. Missouri–Kan.–Tex. R. Co.,* 320 U.S. 323, 330, 332, 64 S.Ct. 146, 149, 150, 88 L.Ed. 76 (1943) ("*MKT Railroad*") (indicating that after 1934 the Board has performed an adjudicatory function in investigating representation disputes), and in *Aircraft Mechanics Fraternal Ass'n v. United Airlines,* 406 F.Supp. 492, 498, 501, 503 n. 11, 506 (N.D.Cal.1976) (same), these cases involve jurisdictional disputes concerning which of *two unions* represent a "craft or class." *See MKT Railroad,* 320 U.S. at 325–27, 64 S.Ct. at 147–48; *Aircraft Mechanics,* 406 F.Supp. at 494–95. Assigning the Board an adjudicatory role in such disputes does not risk compromising the Board's neutrality when it comes to resolving a

dispute between a union and an employer. Indeed, the *Chicago & North Western* Court recognized that resolution of jurisdictional disputes between two unions may represent an exception to the Board's otherwise purely investigatory powers. 402 U.S. at 580–81, 91 S.Ct. at 1737; *see also Regional Airline Pilots,* 915 F.2d at 1402. Because the present case does not involve a jurisdictional dispute between two unions, it remains proper to describe the Board's powers here as purely investigatory.

It should also be noted that the *Aircraft Mechanics* court, at least, may have referred to the Board's function as "adjudicatory" because of the court's perception that "since the Board must insure a coercion-free election atmosphere, it usually makes a finding concerning illegal influence, which finding is binding on the courts." 406 F.Supp. at 503 n. 11. That is to say, *any finding* is, in a sense, an adjudication; the district court in *Aircraft Mechanics* had no cause to think otherwise. In the present case, however, America West seeks to distinguish between types of "findings." On the one hand, the Carrier does not dispute that the Board may make a "finding" of illegal influence, for example, for purposes of determining the next step in its *investigation* of a representation dispute. In fact, America West would go so far as to allow the Board to issue its finding to

■ In light of the legislative history recounted in *Chicago & North Western*, we conclude that the federal courts have jurisdiction to determine whether the Board has mistakenly stepped out of the investigator's inverness into the robe of the adjudicator. If the Board has done so, it has exceeded its statutory authority—regardless of whether its action also happens to be employed as an investigatory tool. *See also Brotherhood of Ry. & S.S. Clerks v. National Mediation Bd.*, 374 F.2d 269, 273 (D.C.Cir.1966) ("[i]n a case of a demonstrably false and misleading statement in the Board's announcement [to carrier employees] of the new election[,] the courts are not without jurisdiction").

## II. Preliminary Injunction

### A. Standard of Review

■ The decision whether to issue a preliminary injunction rests within the discretion of the district court; its decision "will be reversed only if the district court relied on an erroneous legal premise or abused its discretion." *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir.1982). Where the district court is alleged to have relied on erroneous legal premises, review is plenary. *See id.* ("unless the district court's decision relies on erroneous legal premises, it will not be reversed simply because the appellate court would have arrived at a different result"). However, in its application of law to the facts, the decision of the district court regarding a preliminary injunction will only be reviewed for an abuse of discretion. *Id.* Findings of fact will be reviewed for clear error. *See id.*

### B. Merits

■ In deciding to enjoin pendente lite the distribution of the Board's notice to America West employees, the district court applied the standard set forth in *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1174 (9th Cir.1989).

*See* 743 F.Supp. at 697. The *Johnson* standard is as follows:

[T]he party requesting the preliminary injunction[ ] [must] show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. This test is viewed as a continuum.

886 F.2d at 1174 (citations omitted). The district court focused on that portion of the test concerned with whether America West had demonstrated a likelihood of success or, at least, had shown serious questions regarding the merits. *See, e.g.,* 743 F.Supp. at 697 ("This Court has serious concerns that the publication of the special notice ... exceeds the power and authority of the Board."). The parties do not dispute this approach; it therefore may be assumed that the balance of hardships tips sufficiently in favor of America West's request for a preliminary injunction. The predominant question then is whether the district court abused its discretion in concluding that serious questions had been raised as to the merits of America West's motion.

In stating that the Board "found that the Carrier's conduct, taken as a whole, improperly interfered with employees' choice of representative," the proposed notice makes no allowance for the fact that the Board lacks jurisdiction to adjudicate what would otherwise be an unfair labor practice. Indeed, from the use of the word "remedy" or "remedial" throughout the Board's decisions, *see* 17 N.M.B. at 80, 95, 96, 102; 17 N.M.B. at 227, 229, 233, 235, 242, it appears that the Board *is* addressing an unfair labor practice, rather than simply deciding how best to investigate a representation dispute and determine the employees' representative.

We conclude the district court did not abuse its discretion in enjoining pendente

---

Carrier employees, so long as the contested status of the finding appears. What America West challenges is the Board's ability to represent its

finding to Carrier employees as a final *adjudication* of the alleged unfair labor practices.

lite the Board's notice as an action beyond the scope of statutory authority.[8]

AFFIRMED.

---

**8.** We need not reach America West's alternate contentions that the Carrier was denied due process, or that the notice infringes upon the First Amendment rights of the Carrier and its management.