**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4089

COURTNEY FLOYD GREGORY, a/k/a Bobby
Lee Graves, a/k/a Deangelo D. Marsh,
a/k/a Marcello N. Williams,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4090

SCOTT WILLIAM LEE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4091

ERNEST STERLING WRIGHT, a/k/a Petey
Wise,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4156

LARRY EUGENE REED,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Newport News.
Raymond A. Jackson, District Judge.
(CR-96-22)

Argued: March 6, 1998

Decided: June 23, 1998

Before MOTZ, Circuit Judge, PHILLIPS, Senior Circuit Judge, and
KEELEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Joseph Massie Durant, CUMMING, HATCHETT &
JORDAN, P.C., Hampton, Virginia, for Appellant Gregory; Stephen
King Smith, Hampton, Virginia, for Appellant Reed; James Vance
Stallings, HUDGINS & STALLINGS, Newport News, Virginia, for
Appellant Lee; James Stephen Ellenson, Newport News, Virginia, for
Appellant Wright. Michael R. Smythers, Assistant United States
Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Helen F.
Fahey, United States Attorney, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

PER CURIAM:

In April, 1996, a federal grand jury indicted Courtney Floyd Greg-
ory, Scott William Lee, Ernest Sterling Wright and Larry Eugene

2

Reed on various drugs and weapons charges. Specifically, all of the men were charged with (1) conspiracy to distribute marijuana, cocaine and more than 50 grams of "crack" cocaine between January 1984 and February 1996, in violation of 21 U.S.C.§ 846; and (2) distribution or possession with intent to distribute cocaine or "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1). Wright and Reed were charged with using or carrying a firearm while trafficking in illegal drugs, in violation of 18 U.S.C. § 924(c)(1). Wright also was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). The appellants were convicted by a jury on the conspiracy and other counts. The trial court then sentenced all of the appellants to terms which included life imprisonment.

These appeals raise issues regarding the trial court's denial of appellants' motion to exclude evidence of prior crimes, wrongs or other bad acts, and the sufficiency of the government's evidence regarding the conspiracy. The appellants also challenge the trial court's sentencing calculations, its admission of Rule 801(d)(2)(E) evidence and other statements, its ruling that the statute of limitations had not run as to appellant Gregory, and the adequacy of the jury instructions. Finally, the appellants assert that the trial court erred when it denied their motion made on the first morning of trial to withdraw their jury trial request. Finding no error, we affirm.

I.

The government presented 72 witnesses and 226 exhibits to demonstrate the existence of a twelve (12) year conspiracy by the four named appellants and numerous other unindicted co-conspirators to jointly participate at various times in a venture to distribute or possess with intent to distribute cocaine, "crack" and marijuana. The appellants distributed drugs in an "open air drug market" in Denbigh/Newport News and the Williamsburg/Toano areas of Virginia. They acquired drugs from the same suppliers, then distributed them together, using and possessing firearms to protect their drugs and drug territories.

CONSPIRACY

The government's witnesses established that (1) Gregory was a leader in the conspiracy; (2) Reed was a supervisor, who dealt drugs

3

with all of the conspirators at one time or another over the course of the conspiracy; (3) Wright exercised decision-making authority, recruited "runners" for the conspiracy, and claimed a larger share of profits than most other members; and (4) Lee was a mid-level dealer. Nevertheless, appellants contend that the evidence was insufficient to establish the existence of a conspiracy and that they were wrongly convicted.

### Courtney Gregory

Although numerous witnesses placed the co-conspirators together, Gregory contends that the evidence offered was insufficient to establish the existence of a conspiracy. He specifically alleges that the testimony of the witnesses to various overt acts, such as drug sales, arrests and convictions in other jurisdictions, and traffic stops, establishes only "isolated drug deals" not associated with a common conspiracy.

### Larry Reed

Reed likewise maintains that witness testimony at trial did not sufficiently connect him to the co-defendants or the conspiracy. He argues that the government's witnesses who placed him in contact with co-defendants offered insufficient factual proof, and he contends that any evidence or allegations of drug sales placed him in separate groups from his co-defendants, establishing at most only "isolated drug deals" not associated with a common conspiracy. Reed also argues that the government's witnesses lacked credibility, that they failed to identify him at trial, and failed to testify as to specific dates alleged in the indictment. For these reasons, he also contends that the evidence as to the substantive counts against him was insufficient as a matter of law.

### Ernest Wright

Wright was incarcerated for nearly eight years of the twelve year conspiracy, first between January 1986 and January 1991, then again from February 1994 until the present. Consequently, his only alleged involvement in the conspiracy was between 1992 and 1994. He main-

4

tains that, if anything, the government only established a separate conspiracy with him and defendant Reed, rather than the conspiracy among all of the defendants alleged in Count 1 of the Indictment.

Scott Lee

Lee's arguments are nearly identical to those of the other appellants. He alleges that the testimony of the government's witnesses did not sufficiently connect him to the other defendants or the conspiracy, and that those witnesses who placed him in contact with the remaining appellants or other conspirators offered insufficient factual proof of a conspiracy. He too contends that any evidence or allegations of drug sales placed him in separate groups and established only "isolated drug deals" not associated with a common conspiracy. Lee also maintains there was no testimony to connect him with alleged kingpin and co-conspirator, Larry Reed.

MURDERS

The government also presented evidence regarding two murders associated with the activities of the conspiracy. First, witnesses testified about the murder on September 25, 1988 of Maxine Amos at her parents' home. These witnesses indicated that Reed killed Ms. Amos when he broke into her parents' home to steal firearms that he intended to sell to "re-up" his drug supply. Reed then boasted of this murder to Ernest Wright, who used this knowledge to obtain work release from prison.

Second, the government offered evidence as to the murder of Lee's half-brother, Leroy Lee. According to witnesses, Leroy Lee owed the conspiracy several thousand dollars for drugs he had used personally. This drug debt so angered Scott Lee and Courtney Gregory that Gregory offered Lee money to lure Leroy to Chickahominy, so that Reed could kill him. Scott Lee even supplied Reed with the gun used to kill Leroy Lee. While in jail, Reed boasted of killing Maxine Amos and Leroy Lee, telling other inmates that shooting someone in the ear was the best way to kill them. Notably, both Amos and Lee were killed by gunshots to the ear, which a forensics expert testified was a rare method of murder.

5

Despite this evidence, the appellants contend that these murders were unrelated to the conspiracy. In support of this claim, they assert that neither Larry Reed nor anyone else ever has been charged with the murder of Maxine Amos or Leroy Lee. Reed argues he was prejudiced by government testimony linking him as the "triggerman," and Scott Lee contends that evidence linking him to his half-brother's murder was attenuated and circumstantial, as well as unrelated to the conspiracy. According to Lee, the evidence showed only that he and Leroy were dealing drugs, and that their Jamaican supplier (who the government argued was Courtney Gregory) was pressuring him to get Leroy to pay his debts. The remaining appellants maintain they were prejudiced by the mere introduction of evidence against Reed and Scott Lee as to these crimes.

Simply put, appellants contend that there is no nexus between the killings and any other count in the indictment; consequently, the trial court should have deleted any mention of the murders from the overt acts charged as part of the conspiracy. The government maintains that these killings establish that the appellants, through various actions, undertook to conceal the conspiracy and their unlawful drug activities, as well as to ensure the conspiracy's continuing success. It argues that their violent conduct was directly related to these objectives, it argues, and was properly considered by the court.

II.

The first issue is whether the district court abused its discretion in allowing the government to introduce evidence of the shooting murders of Amos and Lee and the drug distribution activities of Courtney Gregory. A district court's evidentiary rulings are reviewed under the narrow abuse of discretion standard. See United States v. Sanchez, 118 F.3d 192, 195 (4th Cir. 1997). Although the appellants maintain such testimony should have been excluded pursuant to Fed.R.Evid. Rule 404(b), the government argues persuasively that the evidence was not of prior bad acts but constituted substantive evidence of the charged conspiracy.

This Court recently analyzed the admissibility of this type of evidence in United States v. Grimmond, 137 F.3d 823, 831-32 (4th Cir. 1998), where the defendant appealed his conviction on federal gun

6

and drug charges, alleging that the trial court abused its discretion in admitting evidence of his involvement in two shootings. Although the defendant claimed that such evidence should have been excluded pursuant to Rule 404(b), we disagreed, noting that"[e]vidence of prior bad acts is admissible if it is . . . necessary to show an essential part of the crime. In fact, when `other crimes, wrongs or acts' evidence is relevant to establishing an element of the offense, Rule 404(b) is not even implicated." Id. (citations omitted). Since the challenged evidence in Grimmond was used to establish an element of the offense with which the accused was charged, we held that it did not constitute "other crimes" evidence within the meaning of Rule 404(b).

The contested evidence in this case is nearly identical to that in Grimmond. Testimony regarding the murders established the existence of the conspiracy and the activities undertaken by the appellants to further its objectives. Even they admit that any evidence regarding the murders was properly admitted if relevant to the conspiracy, because it would be part of a single criminal episode or inextricably intertwined. See United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996); United States v. Kennedy, 32 F.3d 876, 886 (4th Cir. 1994). Once such evidence has been linked to the conspiracy, no Rule 404(b) analysis is required.

The trial court found all of the Amos and Lee murder evidence relevant to the conspiracy because it was part of a single criminal episode or inextricably intertwined. For the same reasons, the court also found that the evidence of appellant Gregory's drug distribution activities proved the conspiratorial scheme. We agree and conclude that because this evidence did not fall within the purview of Rule 404(b), it was properly admitted by the trial court.

III.

Although the appellants' remaining assignments of error also lack merit, we will address them briefly.

A.

The appellants challenge the sufficiency of the evidence of the existence of a conspiracy. An appellate court reviews the sufficiency

7

of evidence to support a conviction "in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." A conviction must be upheld if, in that light, " any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979) (emphasis in original); United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). This standard of review is so strict that a reversal on the ground of insufficiency of evidence should be confined to those cases in which the failure of proof is clear. United States v. Jones, 735 F.2d 785, 791 (4th Cir.), cert. denied, 469 U.S. 918 (1984).

The record below is replete with references to countless acts regarding the concerted drug distribution and weapons crimes of these defendants. Numerous witnesses and exhibits supported a finding of the existence of a conspiracy. Given the very strict standard for evaluating the sufficiency of such evidence, we find that the evidence presented at trial regarding appellants' conspiracy clearly was sufficient to uphold their convictions.

B.

The trial court properly applied the sentencing guidelines based upon the evidence in the case and the appellants' backgrounds.

1.

At sentencing, the government can meet its burden of proving by a preponderance of the evidence the quantity of drugs involved for each defendant by introducing relevant and reliable evidence. United States v. Gilliam, 987 F.2d 1009, 1013-14 (4th Cir. 1993); United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991); Guidelines Manual § 6A1.3(a). Here, despite the variances about drug quantities between the testimony at trial and the appellants' presentence reports, the trial court carefully considered the extent of each appellant's participation in the conspiracy, and the quantity and type of drugs foreseeable to that appellant within the scope of his agreement. Accordingly, we affirm the trial court's drug quantity calculations.

2.

A sentence under the Guidelines must be calculated on the basis of all criminal activity undertaken in concert with others, including conduct of others in furtherance of the execution of the jointly undertaken activity that was reasonably foreseeable to a defendant. United States v. Williams, 986 F.2d 86, 90-91 (4th Cir.), cert. denied, 113 S.Ct. 3013 (1993); Guidelines Manual, § 1B1.3(a)(1)(B). Even if an appellant did not distribute crack cocaine himself as part of the conspiracy, the overwhelming evidence at trial established that it was reasonably foreseeable that "crack" cocaine was being sold by his co-defendants and co-conspirators. For that reason, appellants' argument that they should have been sentenced for distribution of powder cocaine rather than "crack" cocaine clearly lacks merit in light of witness testimony about the distribution of crack cocaine as part of the conspiracy.

3.

Appellants Gregory, Reed and Lee object to the trial court's finding that a cross-reference for first degree murder that resulted in an assessed base offense level of 43 points was warranted. All parties agree that the trial court was permitted to consider any relevant and reliable evidence before it to determine the relevant conduct for sentencing purposes. United States v. Bowman, 926 F.2d 380 (4th Cir. 1991). Having already decided that the record establishes a direct connection between the murders and the conspiracy, we reject any appeal to be resentenced without a cross-reference for first degree murder.

4.

Appellants Gregory and Reed contest the Court's imposition of a two-level enhancement for possession of a dangerous weapon. Incredibly, despite testimony from numerous witnesses about countless threats and violent acts using firearms that occurred during the course of the conspiracy, Reed asserts that any evidence of dangerous weapons had nothing to do with the offenses charged. Likewise, Gregory says the only evidence of a dangerous weapon concerned the Leroy Lee murder, which he maintains was not connected to the conspiracy. These contentions are meritless. In light of the many references in the

9

record to their possession and use of firearms in the course of drug distribution activities, we reject appellants' arguments that they are entitled to resentencing without a two-level firearms enhancement.

5.

Courtney Gregory contends that he should have been granted a downward departure because, as an illegal alien, he is subject to more severe penalties than a similarly situated citizen defendant. He complains he will be incarcerated at a maximum detention facility until the end of his sentence, will not be permitted to serve the last ten percent (10%) of his sentence in community confinement, and, then, will be deported.

Gregory cites no authority in support of the proposition that, as a matter of right, he is entitled to a downward departure on this basis. To the contrary, his illegal alien status, alone, is an inappropriate basis for departure. See United States v. Restrepo, 999 F.2d 640, 644 (2d Cir. 1993). Moreover, the fact that he was sentenced to life in prison without the possibility of parole renders his argument baseless.

C.

Appellants object to the introduction of numerous co-conspirator statements, arguing they constituted hearsay improperly introduced under F.R.E. 801(d)(2)(E). As such decisions by a trial court are entitled to great deference, this Circuit reviews questions of admissibility of evidence only for a clear abuse of discretion. United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994). This same standard applies to the admissibility of evidence pursuant to Fed.R.Evid. 801(d)(2)(E). Bourjaily v. United States, 483 U.S. 171, 181 (1987); United States v. Clark, 986 F.2d 1252, 1255 (4th Cir. 1992).

Only one of the co-conspirator statements at issue was subject to a Rule 801(d)(2)(E) analysis, and that statement was properly admitted by the Court as a statement offered against a party during the course of and in furtherance of the conspiracy. See United States v. Jackson, 863 F.2d 1168, 1171 (4th Cir. 1989). All remaining co-conspirator statements were offered pursuant to other evidentiary rules and were not subject to the same admissibility standard.

10

D.

Gregory's claim that the statute of limitations expired as to his involvement in the conspiracy also lacks merit. The statute does not expire until five years after the last overt act occurring during the existence of a conspiracy. Fiswick v. United States, 329 U.S. 211, 216 (1946). Since the overt act of one conspirator is attributable to all other partners, it is logical that any overt act of any conspirator within the applicable period provides a sufficient basis to prosecute the remaining defendants for that offense. See Pinkerton v. United States, 328 U.S. 640, 647 (1945).

At trial, the government offered proof of the commission of an overt act within the applicable statutory period, as required by law. In contrast, Gregory offered no evidence to substantiate his contention that he withdrew from the conspiracy more than five years prior to the return of the indictment. Although such timely withdrawal would have precluded a conspiracy conviction against him, the evidence established that Gregory continually participated in the conspiracy until its end. Hence, we uphold the trial court's ruling that the statute of limitations did not bar the conspiracy charge against Gregory.

E.

Gregory also alleges that the trial court's denial of his Instruction No. 16 regarding the conspiracy charge requires reversal of his conviction. Appellate courts review the decision of the trial court about whether to give a jury instruction, and the content of that instruction, for abuse of discretion. United States v. Russell, 971 F.2d 1098 (4th Cir. 1992). By that standard, the trial court's jury instructions in this case, when taken as a whole, fairly stated the controlling law regarding drug conspiracies. United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991).

Gregory cannot show that the instruction he offered (1) was correct; (2) was not substantially covered by the Court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired his ability to conduct his defense. United States v. Guay, 108 F.3d 545, 550 (4th Cir. 1997). In this case, due to the similarity between Instruction No. 16

11

as requested, and the charge as given, it is clear the trial court did not abuse its discretion in refusing to include the excess language requested by Gregory.

Even had the trial court erred, we have held that a conviction based on improper jury instructions will not be reversed so long as the instructions, as a whole, include the substance of the requested conspiracy charge. United States v. Dorta, 783 F.2d 1179, 1183 (4th Cir.), cert. denied sub nom. Drum v. United States, 477 U.S. 905 (1986). The substance of the requested conspiracy charge was included here, nullifying any claim by Gregory that the jury charge was inadequate or improper.

F.

Finally, the lower court did not err in refusing to allow appellants to withdraw their request for a jury trial just prior to voir dire. The court's denial of a defendant's request for a trial to the court is reviewed for abuse of discretion. United States v. Morlang, 531 F.2d 183, 188 (4th Cir. 1975).

Appellants argue that Fed.R.Crim.P. 23(a), which conditions a defendant's waiver of a jury trial on the government's consent, is unconstitutional. As the government points out, however, the constitutionality of this rule was upheld in Singer v. United States, 380 U.S. 24, 36 (1965) (holding that there is no constitutional impediment to conditioning a waiver of the right to trial by jury on the consent of the prosecuting attorney and the trial judge). Likewise, the Court upheld the requirement of the rule that consent of the prosecutor and approval of the court be obtained to a defendant's waiver of a jury trial. Id.

Where the government objects to a defense motion to proceed without a jury, and the defense offers no evidence to establish that the government's insistence on trial by jury would result in the denial to the defendants of an impartial trial, a trial court is within its discretion in denying the defendant's request. Singer, 380 U.S. at 37-38. Here, the reasons offered -- too few African-Americans in the jury pool and an "enormous amount of 404(b) evidence"-- are not sufficiently

12

compelling to require the court and government to consent to appellants' last minute waiver of the right to a trial by jury.

IV.

For the foregoing reasons, the appellants' convictions are

AFFIRMED.

13