INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL–CIO, Plaintiff,

v.

CONTINENTAL AIRLINES, INC., Air
Micronesia, Inc., and National
Mediation Board, Defendants.

Civ. A. No. 90–2901.

United States District Court,
District of Columbia.

Dec. 20, 1990.

Joseph Guerrieri, Jr., Edgar N. James, Gregory A. Szallar, Washington, D.C., for plaintiff.

Patricia A. Casey, Richard L. Wyatt, Jr., Washington, D.C., for defendant Continental Airlines, Inc.

R. Tenney Johnson, Washington, D.C., for defendant Air Micronesia, Inc.

Theodore C. Hirt, David J.F. Gross, U.S. Dept. of Justice, Washington, D.C., for defendant Nat. Mediation Bd.

## MEMORANDUM

GESELL, District Judge.

This is a labor dispute concerning the propriety of an effort by an employer to poll its employees following a union merger approved by the National Mediation Board. The case is before the Court on the incumbent union's motion for preliminary injunction. Extensive briefs, supported by a verified complaint, exhibits, declarations and the testimony of a Senior Vice President of the employer create a full record. The Court has heard the parties three times, first when the matter was presented on the union's application for a temporary restraining order, which was granted, again on the union's application to extend the TRO, which was also granted, and the employer's motion to transfer the case to the Southern District of Texas, which was denied, and a third time on the preliminary injunction application.

The Court gave notice in open court on December 6, 1990, by Order dated December 7, 1990, and again at the preliminary injunction hearing, that it might consolidate trial on the merits with the preliminary injunction proceedings pursuant to Fed.R.Civ.P. 65(a)(2). No party objected. The record now before the Court is more than sufficient to resolve this matter on the merits. The Court has been greatly assisted by the thorough briefs and arguments of experienced counsel on both sides and by a brief from the National Mediation Board (NMB) supporting plaintiff's position.

■ The employer, Continental Airlines, Inc., is an air carrier subject to the unique and exclusive provisions of the Railway Labor Act, which governs its relations with its approximately 6,500 flight attendants. The importance of railroads and airlines to the flow of commerce and national defense led Congress to enact this special regulatory scheme which, unlike the National Labor Relations Act, removed employers from direct involvement in labor representation matters by establishing the NMB and granting it the exclusive authority, after investigation, to determine union representation issues. Under the Act, the NMB is not required to make a carrier such as Continental a party to representation proceedings before it, and a carrier lacks authority to initiate a representation dispute or to withdraw union recognition once awarded by the Board. *See IAM v. Alitalia Airlines*, 600 F.Supp. 268 (S.D.N.Y. 1984), *aff'd*, 753 F.2d 3 (2nd Cir.1985); *Brotherhood of Ry. & S.S. Clerks v. Association for the Benefit of Non–Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). The NMB has exclusive jurisdiction to conduct employee elec-

tions and decide representation disputes. *Association of Flight Attendants v. Delta Air Lines, Inc.*, 879 F.2d 906 (D.C.Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). The right of employees subject to the Act to select their own representatives free of employer intrusion is judicially enforceable. *Chicago & North Western Ry. Co. v. United Transp. Union*, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971).

Before the Court turns to the sole issue remaining before it, that is, the legality of a so-called poll initiated by Continental, it is necessary briefly to outline procedural developments occurring during the litigation to date.

The NMB issued a decision on October 31, 1990, finding after a long investigation that the then-incumbent Union of Flight Attendants ("UFA") had merged with plaintiff International Association of Machinists and Aerospace Workers, AFL–CIO ("IAM"), and transferring from UFA to IAM the certification as representative of Continental's flight attendants.[1] Continental had asked for a new representation election among the flight attendants, but the Board declined. Continental then filed suit against the Board in the United States District Court for the Southern District of Texas seeking a review of the Board's decision and undertook to poll its flight attendants regarding their desire to be represented by IAM.

The present action was then filed by IAM to prevent completion of the poll and to obtain an order directing the NMB to enforce its decision. On November 28, 1990, the Court entered a Temporary Restraining Order preventing Continental from proceeding with the poll. It ordered Continental to instruct its agent, the firm of Price Waterhouse, to seal the ballots and refrain from processing them or discussing them with anyone, including Continental.

■ Thereafter, Continental filed for bankruptcy under Chapter 11 in Delaware. Continental then challenged this Court's jurisdiction, claiming that because of the bankruptcy this action had to be stayed under 11 U.S.C. § 362. The Court on December 6, 1990, denied a stay to the extent that the TRO remained in effect but made clear that the stay issue remained open for further consideration. The Court now concludes that this matter is not stayed by the Continental bankruptcy.[2]

Continental also sought, unsuccessfully, to transfer this case to the Southern District of Texas.[3] IAM's oblique effort to preempt the Texas lawsuit by purporting to seek an order from this Court directing the NMB to enforce its decision was also rejected. These preliminary matters having been resolved, the Court proceeds to the merits.

■ When Continental initiated the poll, it represented to those polled that it felt the NMB's action was unfair and that it was defending the flight attendants' "right to a fair election" by filing the suit in Texas. Its Chairman stated, however, that, "If the majority of you tell me that you want to be represented by the IAM instead of UFA then I will accept and abide by the decision."

**1.** Certification was also transferred as to defendant Continental/Air Micronesia. Counsel for Air Micronesia appeared at the first TRO hearing in the case only, declaring his client's interests to be aligned with Continental's.

**2.** Continental chose not to pursue the stay issue further in the preliminary injunction proceedings. The bankruptcy stay provision is inapplicable because, although this is an action against the debtor, *compare In re Continental Airlines Corp.*, 50 B.R. 342 (S.D.Tex.1985), *aff'd*, 790 F.2d 35 (5th Cir.1986), the First Amended Verified Complaint seeks only prospective declaratory and injunctive relief. IAM seeks to enjoin Continental from post-bankruptcy petition conduct, i.e. proceeding with the poll after this Court's

TRO expires. *See, e.g., In re York*, 13 B.R. 757 (1981); *In re St. Mary Hospital*, 86 B.R. 393 (Bankr.E.D.Pa.1988). No monetary claims are involved.

**3.** The Court denied Continental's motion to transfer from the bench. The Court found that Continental was subject to personal jurisdiction in this Court and venue was proper under 28 U.S.C. section 1391. Although some witnesses and evidence related to the poll were in Texas, there was no showing of genuine inconvenience, and the issues appeared to be primarily legal. Accordingly, plaintiff's choice of forum was respected.

The ballot was a one-sided device. Flight attendants were asked to check a box stating "Yes, I want to be represented by the IAM." The Chairman's letter and the ballot itself stated that if the recipient did not return the ballot, Continental would assume the flight attendant was opposed to IAM representation. Thus, because the flight attendants were under no legal requirement to respond and no election was pending, the polling result was practically certain to favor Continental's well-known desire to thwart IAM. There was no reason to vote for IAM because IAM was already the certified representative, and the poll was meaningless in this regard. But those who had every right to ignore the poll entirely because of the NMB's decision would be improperly counted as against IAM. Apparently to ensure this twisted result, the ballot was mailed out November 16, 1990, without prior consultation with the IAM leadership or the NMB and without any neutral supervision of its content or subsequent handling.[4]

The poll and an accompanying letter from Continental's Chairman, addressed "to all Continental Flight Attendants," are attached to the Verified Complaint (Exhibit L), and these documents are also attached to this Memorandum and made a part hereof.

This fictitious election followed a long period of Continental's persistent and vigorous union resistance, fully documented in the record. First Declaration of Carla Winkler, November 26, 1990. For many years the company sought to undermine union representation of its flight attendants and failed to reach formal agreements by collective bargaining with major unions. Continental publicized its outright opposition to IAM's take-over of UFA, and its unyielding position was well known to its flight attendants, who were left confused and suspicious.

While the poll ballot responses, although numbered, were acceptable without signature or other identification and Continental directed management to avoid personal contact with the flight attendants on the matter, the poll interfered with IAM's certification as the exclusive bargaining representative of the flight attendants. Proof as to the effect of the poll is found entirely in a declaration of Carla Winkler, president of UFA:

> In the course of my duties as President, I routinely receive reports from the approximately twenty UFA representatives in the field. I also routinely receive phone calls directly from the members we represent. Beginning on Saturday, November 17th, our members began to receive ballots and I began to receive reports from UFA representatives and phone calls from individual members. By the following Tuesday, I concluded that hundreds of inquiries had been made to the union by flight attendants throughout the country. I concluded from the reports and direct conversations that there was widespread confusion as to why an election was being conducted in the company without the union's knowledge or involvement, particularly after our members had been informed by us that the National Mediation Board's decision had settled the representation issue. A number of flight attendants asked how the company's actions would now affect the union's right to bargain on their behalf. It became clear to me that Continental's actions were perceived by many of our members as hostile to the union and made the union appear to be powerless and uninformed.

Second Declaration of Carla Winkler, ¶ 3, Dec. 16, 1990.[5]

After taking into account the nature and the timing of the poll and the long antago-

---

4. Although Continental sought to argue that it had provided prior notice by informing the IAM immediately before sending out the ballots, the poll and attached letter were sent by facsimile to the IAM president on November 16 with a brief additional cover letter stating that the poll had already been mailed to the home of each Continental flight attendant, and the Continen-

tal Vice President who testified at the motion hearing acknowledged that he could not recall the precise sequence of events.

5. Continental declined to cross-examine Ms. Winkler, who was present at the preliminary injunction hearing.

nistic relationship between Continental and its flight attendant unions, the Court reaches the following conclusions of law.

1. The poll was a clumsy attempt to create a justification to seek to decertify a union certified by the National Mediation Board pursuant to its exclusive jurisdiction. The primary purpose of the poll was to create an appearance of employee sentiment antagonistic to IAM, thus unsettling IAM's exclusive representative status as determined almost contemporaneously by the NMB. The poll was inconsistent with Continental's obligation to "exert every reasonable effort" to settle its dispute with IAM, and thus it violated 45 U.S.C. § 152, First.

2. The poll was coercive in the sense that it operated to interfere with and adversely influence IAM's recently certified position as the proper representative, in violation of 45 U.S.C. § 152, Third and Fourth. Moreover, the poll had the potential for coercing pro-IAM employees into casting ballots in a phony election for fear of otherwise giving Continental ammunition in its fight to decertify IAM.

3. The poll served no legitimate purpose, offended both the letter and spirit of the Railway Labor Act and constituted an illegal intrusion of Continental's management designed to undermine the NMB's action.[6]

■ Continental urges its policy was justified under the First Amendment to the Constitution. This defense is misplaced. The Constitution does not tolerate expression by an employer found to be specifically prohibited by an Act of Congress, an Act which has been repeatedly tested and upheld, particularly when its statements infringe on the First Amendment rights of employees to associate free of employer disruption. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969).

■ Continental may ask a federal court to review an NMB decision, but so long as that decision stands it is the duty of the federal courts to protect the Board's broad authority to resolve representation disputes. Nor can Continental avoid responsibility by asserting that the poll was so poorly conceived and executed that it has no serious legal consequence and was purely a means of obtaining (incorrect) information.

A final injunction is appropriate at this time pursuant to Fed.R.Civ.P. 65(a)(2). No further factual inquiry would serve any purpose.

Continental shall be enjoined from receiving any results of the poll or using or releasing them in any manner, directly or indirectly. Once an appeal, if any, has run its course, the ballots shall be destroyed. IAM shall have its costs. All other aspects of the complaint are dismissed. An appropriate order is filed herewith.

### ORDER

Upon consideration of plaintiff's Motion for Preliminary Injunction, the opposition

---

6. The parties offered no authority directly addressing employer polls under the RLA. Continental cited an opinion declining to enjoin certain employer contacts with one of two labor groups then engaged in a representation dispute before the NMB. *See Ruby v. American Airlines, Inc.*, 323 F.2d 248 (2nd Cir.1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964). That authority has little to do with the present case, which involves a coercive, unilateral effort by the employer to undermine the certified union.

Continental also points to NLRA cases permitting employer polls under certain limited circumstances. But even if the Court improperly ignored the principle that RLA employers have a more limited labor role and ignored the Su-

preme Court's warning against importing NLRA principles into RLA cases, *see Trans World Airlines v. Independent Fed'n of Flight Attendants*, 489 U.S. 426, 109 S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989), Continental's poll would still be invalid, for it fails even the tests for employee polls set in NLRA cases. *See, e.g., NLRB v. A.W. Thompson, Inc.*, 651 F.2d 1141, 1145 (5th Cir. 1981). In particular, the poll is coercive, was designed not to measure employee opinion but to create the desired anti-union outcome, and was commenced without prior notice to the certified union.

The illegality of the present poll is so clear that the Court need not purport to fashion guidelines delineating the conditions, if any, under which RLA employers may poll their employees.

thereto, and the entire record herein, and for the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that the Court, without objection from the parties, having consolidated trial on the merits with the preliminary injunction proceedings pursuant to Fed.R. Civ.P. 65(a)(2), final judgment is hereby granted in favor of plaintiff and against defendant Continental Airlines, Inc.; and it is further

ORDERED that plaintiff's Motion for Preliminary Injunction is moot; and it is further

ORDERED that the Court having determined that the employee poll initiated by Continental on November 16, 1990, violates the Railway Labor Act, 45 U.S.C. § 152, First, Third and Fourth, Continental is enjoined from receiving any results of the poll or using or releasing them in any manner, directly or indirectly. Continental shall instruct its agent, Price Waterhouse, to place all poll ballots under seal and refrain from processing them in any way or discussing them with any party herein, including Continental, its officers and agents, or any other person or entity, directly or indirectly. Once any appeal has run its course, or it is clear that no appeal will be taken, the ballots shall be destroyed; and it is further

ORDERED that plaintiff shall have its costs, to be fixed by the Clerk; and it is further

ORDERED that the First Amended Verified Complaint is in all other respects dismissed.

APPENDIX

**CONTINENTAL AIRLINES**

POST OFFICE BOX 4607
HOUSTON TEXAS 77210-4607

PHONE (AREA 713) 534-5000

**FILED**

November 16, 1990

DEC 20 1990

To All Continental Flight Attendants:

Clerk, U.S. District Court
District of Columbia

The National Mediation Board (NMB) - a federal agency that decides what union represents what employees - recently gave the representation of Continental's flight attendants to the International Association of Machinists (the IAM). I understand this decision was based on a vote conducted by the Union of Flight Attendants in 1984. I wasn't here in 1984 and I know a whole lot of you weren't either.

In fact, I understand in 1984 there were only about 2,600 flight attendants out of more than 4,000 who even received ballots. And only 1,077 flight attendants voted in 1984 to be represented by the IAM. We have approximately 6,500 flight attendants here today. None of this seems fair or logical to me.

Normally, the NMB resolves questions such as this one by conducting an election. Because they chose not to do that in this case and denied you a chance to vote, I have asked our legal people to take action to prevent this transfer.

At the same time, I want to know what you want. Therefore, I am conducting a poll. If the majority of you tell me that you want to be represented by the IAM instead of UFA, then I will accept and abide by that decision. However, if you do not feel this was a fair process, I will continue with the legal action to defend your right to a fair election.

Your participation in this poll will be anonymous. The ballots have been numbered only for the purpose of insuring fairness and accuracy. Your responses will be sent directly to and counted by Price Waterhouse, an independent accounting firm. Only the final result of the poll will be provided to Continental.

A ballot is enclosed with a stamped, self addressed envelope. Similar to the way the NMB conducts its elections, if you do not send in a response it will be assumed that you do not want the IAM to represent you. To be counted your response must be mailed by December 7, 1990.

As the Chairman of Continental Airlines, your opinion is important to me and I will respect your decision.

Sincerely,

Hollis Harris

38481

THIS IS A SECRET BALLOT.    DO NOT SIGN YOUR NAME:

YES, I WANT TO BE REPRESENTED BY THE IAM

SIMILAR TO THE WAY THE NMB CONDUCTS ITS ELECTIONS, IF YOU DO NOT SEND IN A RESPONSE IT WILL BE ASSUMED THAT YOU DO NOT WANT THE IAM TO REPRESENT YOU. TO BE COUNTED, YOUR RESPONSE MUST BE POSTMARKED BY DECEMBER 7, 1990.

FILED

DEC 20 1990

Clerk, U.S. District Court
District of Columbia