**METROFLIGHT, INC., Plaintiff,**

v.

**NATIONAL MEDIATION BOARD, Defendant.**

**Civ. No. 3:92–CV–604–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 1, 1992.

Hugh E. Hackney, Alfred J. Harper, II, Fulbright & Jaworski, Dallas, TX, E. Scott Smith, Ford & Harrison, Atlanta, GA, for plaintiff.

Theodore Hirt and Pamela Eppli, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are: Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, filed May 18, 1992; Declaration of William A. Gill, Jr., Executive Director of the National Mediation Board, and Attachments, filed May 18, 1992 ("Gill Declaration"); Plaintiff's Response, filed June 15, 1992; and Defendant's Reply, filed July 27, 1992.

## I. BACKGROUND

Plaintiff Metroflight is an airline carrier based in Texas. Defendant, the National Mediation Board ("NMB"), is an administrative body created under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188, to investigate and mediate labor disputes affecting rail and air carriers.

On June 4, 1990, pursuant to NMB's regulations, Metroflight notified the NMB of its intent to merge with another carrier, Chaparral Airlines, Inc. Metroflight's mechanics were then represented by the International Brotherhood of Teamsters, Airline, Aero-

space and Allied Employees, Local Union No. 19 ("the Union"). Chaparral mechanics were unrepresented. Upon the Union's application to represent all mechanics and related employees following the merger, the NMB investigated and determined that an election would be appropriate. *See In the Matter of the Merger of Metroflight Airlines, Inc. and Chaparral Airlines, Inc.,* Gill Decl., Attachment 8.

The election was duly conducted and the ballots counted on December 20, 1990. Just before the counting, however, the Union filed charges with the NMB alleging interference in the election on the part of Metroflight. When the Union lost the vote by 67 to 151, the NMB conducted an investigation of the Union's charges. After considering position statements and affidavits filed by the Union and Metroflight, but without holding a hearing, the NMB found that the carrier had interfered in the first election and ordered a rerun election. *See Teamsters v. Metroflight,* Gill Decl., Attachment 15.

The NMB further ordered that along with the ballots in the rerun election would be mailed a "Notice to All Employees" ("Notice"). It is the mailing of this Notice which forms the basis of Metroflight's suit against the NMB. The Notice states in relevant part:

> After an investigation conducted by the National Mediation Board in which the Carrier and the Union had the opportunity to present statements and evidence, the National Mediation Board found that the Carrier's conduct, taken as a whole, improperly interfered with employees' choice of representative under Section 2 Ninth, of the Act.[1] It is unlawful for a carrier to interfere with the organization of its employees.

The Notice was mailed with the ballots and the Union won the rerun election on November 13, 1991. This time Metroflight filed charges alleging unlawful Union activity. In NMB's subsequent investigation, it found that the Union had not interfered in the

---

1. For the sake of clarity, the Court notes that the section of the RLA primarily at issue in this case is referred to by the parties and in most of the cases as "Section 2, Ninth." It is currently codified at 45 U.S.C. § 152, Ninth.

election. The Union was therefore certified as the authorized bargaining representative for mechanics and related employees on March 20, 1992. Metroflight then filed suit, alleging that the NMB had exceeded its authority under the RLA and violated Metroflight's First and Fifth Amendment rights under the United States Constitution. Metroflight asks this Court to set aside NMB's certification of the Union.

## II. ANALYSIS

Since the Supreme Court's decision in *Switchmen's Union of North America v. National Mediation Board,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), it has been well established that federal court review of NMB decisions is exceedingly limited. In *Switchmen's Union,* the Court found that Congress intended representational disputes in the transportation field to be decided by the NMB, with no "dragging out of the controversy into other tribunals of law." *Id.* at 305, 64 S.Ct. at 99. *See also Brotherhood of Railway & Steamship Clerks v. Ass'n for the Benefit of Non–Contract Employees,* 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) (no judicial review of NMB's craft or class determination or its choice of ballot). The scope of federal court review of NMB decisions and election procedures has been characterized as "one of the narrowest known to the law." *Int'l Ass'n of Machinists v. Trans World Airlines,* 839 F.2d 809, 811 (D.C.Cir.), *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988).

■ The Fifth Circuit has stated the following standard for federal court review of NMB determinations:

First, judicial interdiction will be permitted where a complaining party makes a 'substantial showing' of a violation of that party's constitutional rights as a result of the Board's action.... Second, courts may intervene with Board actions which are 'in excess of its delegated powers and contrary to a specific prohibition in the Act.'

*Russell v. National Mediation Board,* 714 F.2d 1332, 1339–40 (5th Cir.1983) (quoting *United States v. Feaster,* 410 F.2d 1354 (5th Cir.), *cert. denied,* 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969)). Thus, in order to determine whether there is jurisdiction to review NMB's actions here, the Court must "peek at the merits" to see whether NMB has violated the RLA or the Constitution. *Int'l Ass'n of Machinists v. TWA,* 839 F.2d at 812.

### A. Statutory Issue

■ The RLA entrusts to the Board the duty to investigate representational disputes upon request by either party, and to determine the will of the employees as to whom their representative will be. 45 U.S.C. § 152, Ninth. In determining the appropriate representative, the NMB is empowered "to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier." *Id.* The NMB has the further express authority to "establish the rules to govern the election...." *Id.*

Metroflight itself acknowledges that the courts have construed this section "as giving the Board almost unchecked discretion in deciding by what *procedure* the election will be conducted." Plaintiff's Memorandum at 23. However, Metroflight attempts to cast the NMB's Notice as being not a procedural tool but an adjudication of Metroflight's civil and criminal liability, for which the RLA gives the NMB no authority. *Id.* at 22. Metroflight further argues that the Notice is "false and misleading" because it "implies not only that the NMB adjudicated a legal violation after a purported fair and full 'investigation,' but that it possessed jurisdiction to do so." *Id.* at 26.

Support for Metroflight's position is scarce. The carrier relies principally on *America West Airlines v. National Mediation Board,* 743 F.Supp. 693 (D.Ariz.1990), *aff'd,* 986 F.2d 1252 (9th Cir.1992). At issue in *America West* was the same "Notice to Employees" as is the subject of the present case. 743 F.Supp. at 695. In *America West,* after a disputed representation election, the NMB ordered a second election and distribution of the Notice to employees along with

the ballots. *Id.* The airline brought suit to enjoin distribution of the Notice prior to the second election, and the district court granted a preliminary injunction. *Id.* at 700.

This Court declines to follow the decision in *America West* because to do so would require it to ignore the standard for obtaining judicial review of NMB actions set forth by the Fifth Circuit in *Russell v. National Mediation Board,* cited *supra. Russell* expressly requires a showing that the NMB "egregiously violated a *specific prohibition of the Act"* before federal court intervention is justified. 714 F.2d at 1340 (emphasis added). In *Russell,* the NMB refused to process an employee's application to represent his fellow workers. *Russell,* 714 F.2d at 1341. The Court held that this was a violation of the NMB's clear statutory duty to investigate representational disputes. *Id.* at 1347. Intervention by the judiciary was necessary to preserve the employees' rights under the RLA to freely choose their representatives. *Id.* at 1340.

Further support for the proposition that the NMB must violate a specific duty under the RLA before judicial intervention is warranted is found in the Supreme Court's decision in *Railway Clerks,* cited *supra.* There, among other issues, the Court rejected a challenge by a carrier to the NMB's choice of a ballot which provided no space for a vote against the union. 380 U.S. at 668, 85 S.Ct. at 1201. The Court held that the "details" of election procedure are left "to the broad discretion of the Board with only the *caveat* that it 'insure' freedom from carrier interference." *Id.* at 668–69, 85 S.Ct. at 1202. Since the carrier in this case was "[u]nable to point to any specific requirement of a 'no union' ballot in the Act," the Court found that the NMB had not exceeded its statutory authority. *Id.* at 671, 85 S.Ct. at 1203.

As the Second Circuit has pointed out, "[i]nspection of the [RLA] reveals that there are relatively few commands capable of being violated." *Virgin Atlantic Airways v. Nat'l Mediation Board,* 956 F.2d 1245, 1250 (2d Cir.1992) (quoting *British Airways v. Nat'l*

*Mediation Board,* 685 F.2d 52 (2nd Cir. 1982)). In fact, the only NMB behavior found by a circuit other than the Ninth to be egregious enough to accord a federal court jurisdiction, is the complete failure to investigate a representational dispute, as occurred in *Russell.* Courts have backed the NMB against other types of challenges. *See, e.g., Virgin Atlantic,* 956 F.2d at 1250 (district court lacked power to overturn NMB's certification of a union where the NMB allowed dismissed employees to vote in election); *Int'l Ass'n of Machinists v. Trans World Airlines,* 839 F.2d 809 (D.C.Cir.), *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988) (NMB's refusal to allow temporary employees to vote was not a "gross violation" of the RLA such as to give the district court jurisdiction to overturn union certification); *Zantop Int'l Airlines v. Nat'l Mediation Board,* 732 F.2d 517 (6th Cir.1984) (no violation of RLA where NMB certified union which had not won a majority of the votes cast).

Metroflight is unable to point to a specific part of the RLA which prohibits the NMB from attempting to counteract the effects of previous election interference by a carrier through means such as the Notice. Metroflight attempts to argue that the NMB's Notice violated 45 U.S.C. § 152, Tenth [2] by usurping the Attorney General's prosecutorial function. This allegation is clearly without merit since the Notice made no mention of criminal or civil sanctions or fines.

Similarly without merit is Metroflight's contention that the Notice is false and misleading. The Court finds that the Notice contains none of the impermissible "implications" which Metroflight ascribes to it. As stated above, the Notice does not purport to "adjudicate" Metroflight's criminal or civil liability. Nor does it order Metroflight to "cease and desist" any activity. It merely attempts to neutralize the effects of Metroflight's interference in the first election so as to set the stage for a valid second election. The authority to do this is a necessary part of NMB's duty to "insure the choice of repre-

---

2. This paragraph of § 152 provides for misdemeanor criminal prosecution of carriers by the Attorney General for violation of the third, fourth, fifth, seventh or eighth paragraphs of the section. 45 U.S.C. § 152, Tenth.

sentatives by the employees without interference, influence, or coercion exercised by the carrier." 45 U.S.C. § 152, Ninth. *See Virgin Atlantic*, 956 F.2d at 1251 ("The NMB may properly use its power to designate participants in elections to counteract or prevent carrier influence in the choice of a representative by the employees"). Accordingly, the Court finds that the NMB's Notice was not "an egregious violation of a specific prohibition of the Act" such as to allow this Court to overturn the certification of the Union.

### B. Constitutional Issues

Under the standard set forth in *Russell*, a federal court may also intervene in NMB determinations upon a "substantial showing" by a party of a violation of that party's constitutional rights. 714 F.2d at 1339. Thus, as an alternative to its statutory argument, Metroflight contends that its First and Fifth Amendment rights were violated by the NMB's Notice.

#### 1. First Amendment Issue

■ Metroflight's First Amendment argument is that NMB's Notice improperly characterized Metroflight's speech and conduct during the first election as "unlawful interference." Plaintiff's Memorandum at 6–10. By labelling Metroflight's speech as unlawful, Metroflight argues, the NMB's Notice will have a chilling effect on future legitimate speech by Metroflight. Metroflight in essence asks this Court to review the NMB's determination that Metroflight's actions during the first election were "interference, influence or coercion" under the RLA. 45 U.S.C. § 152, Ninth.

In support of its claims, Metroflight cites cases dealing with the free speech rights of employers under the National Labor Relations Act ("NLRA"). *E.g., Dow Chemical Co., Texas Division v. N.L.R.B.*, 660 F.2d 637 (5th Cir.1981); *UAW v. N.L.R.B.*, 834 F.2d 816 (9th Cir.1987); *N.L.R.B. v. American Tube Bending Co.*, 134 F.2d 993 (2d Cir.), *cert. denied*, 320 U.S. 768, 64 S.Ct. 84, 88 L.Ed. 459 (1943). These cases address the question of whether certain employer conduct constitutes an unfair labor practice under section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1),[3] or whether it is speech protected under section 8(c) of the NLRA, 29 U.S.C. § 158(c).[4]

These cases are inapposite. In *Trans World Airlines v. Independent Federation of Flight Attendants*, 489 U.S. 426, 109 S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989) the Supreme Court warned against "import[ing] wholesale into the railway labor arena" law developed under the NLRA. "Even rough analogies must be drawn circumspectly with due regard for the many differences between the statutory schemes." *Id.* (quoting *Trainmen v. Jacksonville Terminal*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969)). Employers governed by the RLA have "a more limited labor role" than those under the NLRA. *International Ass'n of Machinists (IAM) v. Continental Airlines, Inc.*, 754 F.Supp. 892, 896, n. 6 (D.D.C.1990). Thus, what is permissible campaigning under the NLRA may be unlawful interference under the RLA.

Decisions examining the scope of employer free speech rights in the RLA context are very limited in number. This Court agrees with the approach taken by the court in *IAM v. Continental*, 754 F.Supp. at 896. There, the NMB certified IAM as the union authorized to represent Continental's flight attendants after a NMB-approved merger of the IAM with another union. *Id.* at 893. Shortly thereafter, Continental attempted to poll the flight attendants on whether they wanted to be represented by the IAM. *Id.* at 894. After determining that the poll was "coercive" and "violated both the letter and the

---

**3.** This section states:

   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

**4.** This section states:

(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit. 29 U.S.C. § 158(c).

spirit of the [RLA]," the court permanently enjoined Continental from conducting the poll. *Id.* at 896. Dismissing Continental's argument that the poll was speech protected by the First Amendment, the Court stated:

The Constitution does not tolerate expression by an employer found to be specifically prohibited by an Act of Congress, an Act which has been repeatedly tested and upheld, particularly when its statements infringe on the First Amendment rights of employees to associate free of employer disruption.

*Id.,* citing *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969).

In the present case, the Court has before it the position statements submitted by both the Union and Metroflight to the NMB on the subject of whether Metroflight's actions during the first election constituted unlawful interference. Based on a review of these documents, the Court holds that the NMB was justified in finding that Metroflight's actions violated the RLA. Under the RLA, it is "unlawful" for a carrier to "interfere in any way with the organization of its employees ...," 45 U.S.C. § 152, Fourth, and the NMB must insure that the choice of the employees is made free from "interference, influence or coercion exercised by the carrier." 45 U.S.C. § 152, Ninth. Such conduct is not protected speech under the First Amendment. *IAM v. Continental,* 754 F.Supp. at 896.

### 2. Fifth Amendment Issue

 Metroflight argues that the NMB, by making a finding of interference and issuing its Notice to that effect, deprived Metroflight of various rights without due process of law. Specifically, it alleges that under the requirements of the Fifth Amendment's Due Process clause, the NMB should have held a "full adversary hearing" before making its determination of election interference and issuing its Notice. Plaintiff's Memorandum at 15.

The Court notes that the NMB gave Metroflight the opportunity to submit written evidence before the determination of interference was made. Metroflight submitted a position statement, which the NMB consid-

ered. Gill Decl., Attachment 14. Metroflight is entitled to no more than this. *See Railway Clerks,* 380 U.S. at 667, 85 S.Ct. at 1201 (carrier not entitled to a hearing on craft or class determination); *Feaster,* 410 F.2d at 1366 (Alabama Docks Department not entitled to a hearing on whether it was a "carrier" under the RLA).

### III. CONCLUSION

Since there has been no showing of either "an egregious violation of a specific prohibition" of the RLA or a violation of Metroflight's constitutional rights, the Court is without power to decertify the Union in this case. *Russell,* 714 F.2d at 1339.

NMB's Motion asks the Court to dismiss for lack of subject matter jurisdiction, or in the alternative, to grant summary judgment in NMB's favor. Summary judgment is appropriate in this case. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.