AEROVIAS DE MEXICO, S.A.
DE C.V., Plaintiff,

v.

THE NATIONAL MEDIATION
BOARD, Defendant.

No. CIV. 01–1112(TFH).

United States District Court,
District of Columbia.

March 27, 2002.

Tegan M. Flynn, John Martin Faust, Vinson & Elkins, L.L.P., Washington, DC, for plaintiff.

Theodore C. Hirt, Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, Chief Judge.

In this lawsuit, Plaintiff Aerovias De Mexico, S.A. DE C.V. ("Aeromexico") is suing Defendant National Mediation Board ("NMB") for violations of the First and Fifth Amendments to the U.S. Constitution for actions taken in conjunction with the certification of the International Association of Machinists and Aerospace Workers, AFL–CIO ("IAM") as the union representative of the passenger service employees of Aeromexico. Pending before the Court is NMB's motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Upon careful consideration of NMB's motion, Aeromexico's opposition and NMB's reply thereto, and the entire record herein, the Court will grant the NMB's motion and accordingly dismiss this case.

## I. BACKGROUND

Plaintiff Aeromexico is an airline headquartered in Mexico City, Mexico, authorized to do business in the United States. Defendant NMB is a federal agency, located in Washington, D.C., which has jurisdiction to make certification decisions concerning union representation of employees of air carriers. See 45 U.S.C. §§ 181 and 152, Ninth. The IAM is an international labor organization with headquarters in Maryland.

In March 1997, the IAM filed an application with the NMB seeking to represent Aeromexico's passenger service employees. The NMB conducted an election by secret ballot to determine whether the employees wanted IAM representation. After only forty-nine of 132 eligible employees voted in favor of IAM representation, the NMB denied certification of the IAM as representative of the passenger service employees and dismissed its application. Compl. ¶ 6.

In April 2000, the IAM filed a second application, alleging a representation dispute and once again seeking to be certified as the union representative of Aeromexico's passenger service employees. After an investigation, the NMB found sufficient grounds to conduct an election and mailed ballots to the employees on June 16, 2000, which were to be returned by mail and counted on July 21, 2000. NMB determined that 107 employees were eligible to vote in the election, and after counting the votes on July 21, 2000, it found that forty-seven valid votes had been cast. Because those forty-seven votes constituted less than a majority of eligible voters, the NMB again dismissed the IAM's application to be the employees' representative. Id. ¶ 7.

The IAM then filed charges of election interference with the NMB on August 1, 2000. It alleged, inter alia, that "Aeromexico's managers followed suspected union supporters into break rooms and down the hallways and attempted to eavesdrop on their conversations, creating the impression that the carrier knew which employees had signed authorization cards and supported the Union." Comp. ¶ 8. It further alleged that "Aeromexico managers constantly monitored and taped telephone calls of suspected union supporters creating the impression that Aeromexico was 'keeping a close watch' on the employees." Id. The NMB notified Aeromexico and the IAM that the IAM's allegations presented

a prima facie case of election interference and set forth a schedule for further submissions by both Aeromexico and the IAM. Decl. of Stephen E. Crable Ex. A ¶ 17 & Tab 15.[1] Aeromexico and the IAM then filed several submissions with the NMB, including affidavits, copies of various books, records, documents, fliers, and videos. *Id.* Ex. A ¶¶ 18–21 Among the submissions were three videos that had been shown to employees at mandatory meetings. *Id.* Ex. A ¶ 23; *Aeromexico*, 28 NMB 309, 310, 322–23, 338–39 (2001). In addition, Aeromexico identified ten non-supervisory employees in the craft or class who had been interviewed by its counsel and by its Director of Human Resources in "one-on-one" meetings concerning the IAM's election interference allegations. *Id.* Ex. A ¶ 22 & Tab 20. Finally, from November 14 to November 17, 2000, the NMB investigator interviewed twenty-eight Aeromexico employees and former employees and viewed Aeromexico's Houston offices and the work areas of its employees there. *Id.* Ex. A ¶ 27. During this same period, Aeromexico claims that in an attempt to prepare its defense to the IAM's allegations it conducted non-threatening interviews of some of its employees in which it assured each employee that he or she did not have to agree to be interviewed and that no reprisal would be taken against the employee for anything they said or did not say. Compl. ¶ 9.

In its findings issued on February 23, 2001, the NMB found that "the laboratory conditions required for a fair election were tainted," and it ordered a re-run election using a "Laker" ballot. *Aeromexico*, 28 NMB at 344–46.[2] The NMB also directed that notice be provided to the employees stating that the NMB had found that "Aeromexico's conduct interfered with, influenced, or coerced employees' choice of representative," that a second election had been authorized, and that "Aeromexico is not permitted to influence, interfere with, or coerce employees in any manner in an effort to induce them to participate or refrain from participating in the upcoming election." *Id.* at 345, 347.

1. In considering a motion to dismiss for lack of subject matter jurisdiction, " 'the allegations of the complaint should be construed favorably to the pleader.' " *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). However, a court may consider such materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case. *See Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992) ("Under settled law, the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1) on the complaint standing alone. But where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987) ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.' ") (quoting *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 362–63 (D.C.Cir. 1982)).

2. The NMB has adopted a range of procedures to identify a representative after it has found that a carrier has failed to maintain laboratory conditions. One such procedure is the employment of a "Laker" ballot, in which employees may vote either "yes" or "no" for the applicant organization, and if the union wins a majority of votes cast, it is certified, even if a majority of all eligible voters has not cast ballots. *See Laker Airways*, 8 NMB 236 (1981). Another procedure involves the utilization of a "Key" ballot, in which a union is certified unless a majority of eligible employees vote against representation. *See Key Airlines*, 16 NMB 296 (1989).

**4**

Aeromexico moved for reconsideration of the NMB's findings, which the NMB ultimately denied. Aeromexico also filed a lawsuit against the NMB in the U.S. District Court for the Southern District of Texas, in which it alleged violations of the First and Fifth Amendments and sought to enjoin the re-run election. The court denied Aeromexico's motion for preliminary injunction, and Aeromexico dismissed its lawsuit shortly thereafter. Decl. of Stephen E. Crable ¶¶ 8–13.

The NMB mailed "Laker" ballots to Aeromexico's employees, which were counted in April 2001. Ninety-three employees were eligible to vote in the election, and forty-eight—a majority—voted for IAM representation. On April 30, 2001, the NMB accordingly certified the IAM as the collective bargaining representative of Aeromexico's passenger service employees.

Aeromexico filed the instant lawsuit on May 23, 2001, seeking to set aside the results of the re-run election and certification of the IAM as the representative of its passenger service employees. It charges the NMB with two constitutional violations. First, it claims that the NMB violated its due process rights, pursuant to the Fifth Amendment, to interview employee witnesses in an effort to defend itself against the IAM's charge that it had unlawfully interfered in the first election: "On information and belief, the NMB would not have ordered a re-run election, much less one with a punitive 'Laker' ballot, but for Aeromexico's interviewing of its employees in furtherance of its exercise of its constitutional right to defend itself against the Union's charges of interference." Compl. ¶ 17. Second, Aeromexico claims that the NMB violated its First Amendment rights to express anti-union views and to make objective, non-misleading statements about union representation by "ordering Aeromexico not to 'influence' its employees during the time period leading up to the re-run 'Laker' ballot." *Id.* ¶ 19; *see id.* ¶ 12.

## II. DISCUSSION

It generally is presumed that a district court lacks jurisdiction to review certification decisions of the NMB pursuant to section 2, Ninth of the Railway Labor Act ("RLA"), 45 U.S.C. § 152, Ninth. *U.S. Airways, Inc. v. NMB,* 177 F.3d 985, 989 & n. 2 (D.C.Cir.1999) (citing *Railway Labor Executives' Ass'n v. NMB,* 29 F.3d 655, 662 (D.C.Cir.) (en banc); *id.* at 673 (Randolph, J., concurring, joined by Mikva, C.J., Wald, J., Edwards, J., and Sentelle, J., together comprising a majority of the court), *amended* 38 F.3d 1224 (D.C.Cir.1994) (en banc)); *IAM v. TWA,* 839 F.2d 809, 811 (D.C.Cir.) ("Judicial review of NMB decisions is one of the narrowest known to the law."), *amended* 848 F.2d 232 (D.C.Cir.1988). There are, however, two exceptions to this general rule. The presumption of unreviewability is rebuttable if the complainant can show either (1) that "the certification was a gross violation of the [RLA]" or (2) "that it violated the constitutional rights of an employer, employee, or Union." *TWA,* 839 F.2d at 811; *accord U.S. Airways,* 177 F.3d at 989; *Prof'l Cabin Crew Ass'n v. NMB,* 872 F.2d 456, 458 (D.C.Cir.1989). In alleging only constitutional violations in this case, Aeromexico seeks review solely through the latter exception. The Court of Appeals for this Circuit has stated that "[o]nce an employer (or employee or union) pleads a violation of its constitutional rights or a gross violation of its statutory rights arising from an NMB order, *jurisdiction depends on the merits of the argument.*" *U.S. Airways,* 177 F.3d at 989 (emphasis added). The Court of Appeals has further explained that while a court need only "peek at the merits" when a challenge is

predicated on the exception for a gross violation of the RLA, it must review the "full merits" when evaluating a constitutional challenge. *Id.* at 989–90; *see, e.g., TWA*, 839 F.2d at 812 (rejecting TWA's constitutional challenge to the NMB's disenfranchisement of the temporary flight attendants because it offered no authority for their argument and thus "failed to demonstrate" a constitutional violation).[3]

Under this standard, the NMB argues that there is no jurisdiction to review its actions because Aeromexico has not demonstrated any constitutional violations. It first contends that Aeromexico's due process claim is meritless because no court has recognized a carrier's constitutional right to conduct coercive interviews of its employees during an investigation by the NMB into allegations of election interference and because the process it afforded Aeromexico in this case exceeded the rather minimal amount of process due. Def.'s Mot. at 14–18. The NMB highlights the Supreme Court's explanation that "[w]hether and to what extent carriers will be permitted to present their views on craft or class questions is a matter that the [RLA] leaves solely in the discretion of the Board":

> The Board, as we noted in *Switchmen's Union[of N. Am. v. NMB*, 320 U.S. 297, 304, 64 S.Ct. 95, 88 L.Ed. 61 (1943) ], performs the 'function of a referee.' It does not select one organization or another; it simply investigates, defines the scope of the electorate, holds the election and certifies the winner. Thus, while the Board's investigation and resolution of a dispute in one craft or class rather than another might impose some

additional burden upon the carrier, we cannot say that the latter's interest rises to a status which requires the full panoply of procedural protections.

*Bhd. of Ry. Clerks v. Ass'n for Benefit of Non–Contract Employees*, 380 U.S. 650, 666–67, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); *see also, e.g., United States v. Feaster*, 410 F.2d 1354, 1366 (5th Cir. 1969); *IAM v. Continental Airlines, Inc.*, 754 F.Supp. 892, 893 (D.D.C.1990); *In re Continental Airlines Corp.*, 50 B.R. 342, 350 (S.D.Tex.1985). The NMB specifically notes that in this case, it permitted Aeromexico to submit several different written statements to the NMB explaining its position in detail, to which it attached affidavits from management personnel and other supporting documents, *see* Decl. of Stephen E. Crable Ex. A ¶¶ 16, 21, 25 & Tabs 14, 19, 23, it offered Aeromexico the opportunity to observe all of the witness interviews it conducted, *see id.* Tab 26, at 2, and it considered Aeromexico's motion for reconsideration of the NMB decision, *see* Decl. of Stephen E. Crable ¶¶ 8, 18; *id.* Exs. D, L. All of this, contends the NMB, constitutes more than sufficient process to satisfy the Fifth Amendment in this case. *See, e.g., Bhd. of Ry. & S.S. Clerks v. Ass'n for Benefit of Non–Contract Employees*, 380 U.S. 650, 666–68, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) (rejecting carrier's argument that the NMB is required to hold a hearing on the craft or class issue in which it would participate as a party in interest and holding that "the Board performed its statutory duty to conduct an investigation and designate the craft or class in which the election should be held

---

**3.** In "peek[ing] at the merits" for the purposes of reviewing an alleged gross violation of the RLA, a court "limit[s] the inquiry to 'specific statutory language, without extension to arguing in terms of policy and broad generalities as to what the Railway Labor Act

should provide.' " *U.S. Airways*, 177 F.3d at 990 (quoting *Int'l Bhd. of Teamsters v. Bhd. of Ry. Clerks*, 402 F.2d 196, 205 (D.C.Cir.1968); *Bhd. of Ry. Clerks v. Ass'n for Benefit of Non–Contract Employees*, 380 U.S. 650, 671, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965)).

**6**

and that it did so in a manner satisfying any possible constitutional requirements that might exist" when the NMB received the union's application, received and considered statements from the carrier and the employees, continued to correspond with the carrier, and accepted and considered its application for reconsideration of its decision to proceed to election); *Key Airlines, Inc. v. NMB*, 745 F.Supp. 749, 750, 752 (D.D.C.1990) (rejecting due process challenge to NMB's requirement that carrier send its employees a notice informing them that it had violated the RLA in part because "an overwhelming body of controlling authority makes clear that [the carrier] has no right to participate in Board proceedings of this sort"); *Feaster*, 410 F.2d at 1366 (rejecting argument that the NMB denied due process for failing to hold a hearing because the function of the NMB "is investigatory, not adjudicatory"); *Metroflight, Inc. v. NMB*, 820 F.Supp. 288, 289, 293 (N.D.Tex.1992) (rejecting argument that carrier is entitled to a "full adversarial hearing" before finding election interference and issuing notice because NMB gave carrier "the opportunity to submit written evidence before the determination of interference was made" and was "entitled to no more than this"). Finally, the NMB states that contrary to Aeromexico's claim that but for its interviews with its own employees, the NMB would not have ordered a re-run election, Compl. ¶ 17, its prior written findings makes clear that "[b]ased upon the *totality of the circumstances*, the Board [found] that the laboratory conditions required for a fair election were tainted." *Aeromexico*, 28 NMB at 344 (emphasis added). Rather than relying on any one single factor, in other words, its "conclusion [was] based on 'one-on-one' meetings with employees, mandatory Town Hall meeting and video presentations, misrepresentation of Board procedures, and post-election interviews with employees." *Id.*

The NMB next argues that Aeromexico's First Amendment claim similarly has no merit. Aeromexico complains that the NMB unduly restricted its ability to campaign in the period leading up to the re-run election, in violation of its First Amendment rights, by ordering that it was "not permitted to influence, interfere with, or coerce employees in any manner in an effort to induce them to participate or refrain from participating in the upcoming election." Compl. ¶ 12; *accord Aeromexico*, 28 NMB 309, 347 (2001). In particular, Aeromexico claims that "[b]y ordering Aeromexico not to 'influence' its employees during the time period leading up to the rerun 'Laker' ballot, the NMB violated Aeromexico's First Amendment Rights to express such anti-Union views and to make objective, non-misleading predictions of the likely effects of Union representation." Compl. ¶ 19. The NMB counters that the phrase it employed in the notice was paraphrased from language directly contained in the RLA itself. *See, e.g.*, 45 U.S.C. § 152, Third (stating that "no carrier shall, by interference, *influence*, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier") (emphasis added); *id.* § 152, Fourth (stating that "it shall be unlawful for any carrier to interfere in any way with the organization of its employees ... or to *influence* or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization") (emphasis added). It further points out that such language is boilerplate, routinely included in notices it requires carriers to post in advance of a rerun election, *see, e.g.*, *American Trans Air, Inc.*, 28 NMB 163, 184 (2000) (requiring notice to state that "ATA is not permitted to influence, interfere, or coerce

employees in any manner in an effort to induce them to participate or refrain from participating in the upcoming election"), and that it has been upheld against similar First and Fifth Amendment challenges, *cf.*, *e.g.*, *Metroflight*, 820 F.Supp. at 289, 292–93. In addition, the NMB reiterates language used by the Supreme Court over seventy years ago, which the NMB quoted in its written findings, construing the term "influence" in the RLA context:

> The intent of Congress is clear with respect to the sort of conduct that is prohibited. 'Interference' with freedom of action and 'coercion' refer to well-understood concepts of the law. The meaning of the word 'influence' in this clause may be gathered from the context. *Noscitur a sociis. Virginia v. Tennessee*, 148 U.S. 503, 519, 13 S.Ct. 728, 37 L.Ed. 537 [ (1893) ]. The use of the word is not to be taken as interdicting the normal relations and innocent communications which are a part of all friendly intercourse, albeit between employer and employee. 'Influence' in this context plainly means pressure, the use of the authority or power of either party to induce action by the other in derogation of what the statute calls 'self-organization.' The phrase covers the abuse of relation or opportunity so as to corrupt or override the will, and it is no more difficult to appraise conduct of this sort in connection with the selection of representatives for the purposes of this act than in relation to well-known applications of the law with respect to fraud, duress, and undue influence.

*Texas & N.O. R.R. Co. v. Bhd. of Ry. and S.S. Clerks*, 281 U.S. 548, 568, 50 S.Ct. 427, 74 L.Ed. 1034 (1930); *accord Aeromexico*, 28 NMB at 335–36 (quoting same). The NMB also further explained in its written findings that

Carriers have a right to communicate with their employees during election campaigns, but this right is "not without limit, and even conduct which is otherwise lawful may justify remedial action when it interferes with a representation election." In reviewing communications, the Board examines their content to see if they are coercive, contain material misrepresentations about the Board's processes or the Act, or combined with other Carrier actions, influence the employees in their choice of representative. The Board has found interference in communications that include threats about the consequences of voting for an organization.

*Aeromexico*, 28 NMB at 341 (quoting *In Air Logistics, L.L.C.*, 27 NMB 385, 404 (2000)). Thus, the NMB contends, nothing in the notice could have led Aeromexico to reasonably believe that it needed to refrain from engaging in non-threatening, non-misleading communication of objective facts to its employees. The NMB claims that this view is bolstered by the fact that it explicitly refused to find election interference with respect to such communications. For example, Aeromexico had distributed flyers to the employees along with their paychecks that displayed a picture of a mock union dues withholding check to illustrate the amount of dues they could owe if the IAM was certified, and the NMB found that there was no evidence that the flyer was coercive or contained material misrepresentations. *Id.* at 342. The NMB also attacks the only example cited in Aeromexico's complaint—that "the Order prevented Aeromexico from responding to inquiries from its employees concerning rumors that Aeromexico intended to outsource the job functions performed by its Passenger Service employees if the employees did not vote in favor of the Union," Compl. ¶ 12—by evidencing that Aeromexico actually responded to

similar rumors in letters sent to employees on April 28, 2000 and May 11, 2000 that denied rumors that it was planning to withdraw employee benefits, *see* Decl. of Stephen E. Crable Ex. A, Tab 16, Exs. E, J, and that despite the IAM's allegations that such responses constituted election interference as they attempted to cover up earlier threats by Aeromexico management, the NMB did not credit such allegations and did not reference these letters in its findings of election interference. *Aeromexico*, 28 NMB at 312. Thus, the NMB ultimately concludes. Aeromexico is without any basis to claim a First Amendment violation and has not established such a violation on the face of its pleadings.

In its three-page opposition to this considerable attack, Aeromexico simply rejoins that the NMB has gone "too far" in offering extrinsic material at this stage of the pleadings. Pl.'s Opp'n at 1. Relying solely upon the allegations in its complaint, Aeromexico expresses its view that "the only showing it needs to make to defeat the NMB's motion to dismiss is that its federal constitutional claims are colorable, and the Court need not look beyond the pleadings to see that Aeromexico easily satisfies that burden." *Id.* at 2 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' ")). With respect to its First Amendment claim, Aeromexico claims that its claim "is very similar" to the one advanced in *U.S. Airways*, 177 F.3d at 994, which was sustained against a summary judgment attack by the NMB. In addition, Aeromexico argues that the NMB has oversimplified its due process claim, through

which it challenges the NMB's ability to "penalize Aeromexico" for interviewing employees and defending itself against charges of election interference, without "reasonable notice of the NMB's new position." Pl.'s Opp'n at 3.

The Court concludes, however, that Aeromexico has failed to demonstrate a violation of the Constitution, and therefore, no jurisdiction exists to review the NMB's decision in this case. Aeromexico is mistaken about its burden at this juncture. It is not faced with a simple Rule 12(b)(6) challenge, in which it could reasonably rely on well-pled allegations in a complaint and the Court would look only to the pleadings to determine whether the complainant has sufficiently stated a claim for relief. *See supra* note 1. And the Supreme Court's opinion in *Steel Company*, 523 U.S. at 88–93, 118 S.Ct. 1003, is inapposite. There, the Court specifically rejected the view that the existence of a cause of action under the Emergency Planning and Community Right–To–Know Act of 1986 ("EPCRA"), 42 U.S.C. § 11046(a)(1), was jurisdictional and had to be resolved prior to reaching the question of Article III standing. *Id.* In so doing, the Court distinguished the EPCRA from other statutes in which the elements of a cause of action can be treated as jurisdictional, requiring an evaluation of the merits at the jurisdictional stage. *Id.* at 90–92, 118 S.Ct. 1003 (distinguishing for example, albeit skeptically, the Court's discussion of section 505(a) of the Clean Water Act in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)). Here, by contrast, the very case to which Aeromexico likens its claim states clearly that "jurisdiction depends on the merits of the argument," and in that case the court "therefore turn[ed] to the carrier's claim that the Board's order unconstitutionally restrained

the carrier (prospectively) from engaging in protected expression leading up to the rerun election," thus fully addressing the merits of the constitutional claim. *U.S. Airways*, 177 F.3d at 989–91 (further stating that in *IAM v. TWA*, 839 F.2d at 812, for example, it "evaluated the complainant's [constitutional] claim on its 'full merits' "). As the Court has set forth at length above, the statutory regime at issue here purposely deprives courts of jurisdiction, with very limited exceptions, to prevent the "dragging out of the controversy into other tribunals of law." *Switchmen's Union of N. Am. v. NMB*, 320 U.S. 297, 305, 64 S.Ct. 95, 88 L.Ed. 61 (1943); *see U.S. Airways*, 177 F.3d at 989 & n. 2; *IAM v. TWA*, 839 F.2d at 811. And this Circuit's Court of Appeals has made clear that complainants who seek review must establish jurisdiction over their claims by "demonstrat[ing] either a gross violation of the [RLA] or any violation of the Constitution." *IAM v. TWA*, 839 F.2d at 812. Despite such clear precedent, Aeromexico steadfastly clings to the conclusory allegations of its complaint and summarily asserts, for example, that its claims are similar to those advanced in *U.S. Airways*, without any further explanation or substantiation. After carefully reviewing the arguments and supporting documentation provided by the NMB, the Court is convinced that conclusory allegations proffered by Aeromexico are insufficient to

demonstrate First and Fifth Amendment violations of the Constitution for the purposes of establishing jurisdiction to review the NMB's certification decision in this case.[4] Nor is there a burden on this Court to discern any potential arguments on Aeromexico's behalf when counsel for Aeromexico has made absolutely no attempt to sufficiently support its constitutional claims. *Cf., e.g., Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) ("Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research. But where counsel has made no attempt to address the issue, we will not remedy the defect.... We therefore decline to entertain appellant's asserted but unanalyzed constitutional claim."). The Court therefore concludes that Aeromexico has failed to demonstrate any constitutional violation for the purposes of establishing jurisdiction to review the NMB's actions in this case.

## III.  CONCLUSION

For the foregoing reasons, the Court will grant the NMB's motion to dismiss for lack of subject matter jurisdiction. An appropriate order will accompany this Memorandum Opinion.

---

4.  To the contrary, as detailed at length above, it appears to the Court that the NMB provided Aeromexico with sufficient process by accepting and considering several written submissions, offering Aeromexico the opportunity to observe all witness interviews it conducted, and accepting and considering Aeromexico's motion for reconsideration of its decision. Moreover, Aeromexico has utterly failed to substantiate its claims that the NMB somehow violated the Due Process Clause by utilizing a Laker ballot and that but for Aeromexico's interviews with its employees the NMB would not have ordered the re-run election;

the NMB's findings were clearly predicated on the totality of the circumstances, including its thorough evaluation of numerous factors. Similarly, the Court can find no support for Aeromexico's First Amendment challenge, given the boilerplate language taken from the RLA itself and employed by the NMB in the required notice under well-established precedential interpretation and that Aeromexico did in fact communicate with its employees through paycheck flyers and letters, which the NMB found not to have constituted election interference.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant National Mediation Board's ("NMB") motion to dismiss for lack of subject matter jurisdiction [# 7–1] is **GRANTED**. Accordingly, it is hereby further

**ORDERED** that this case is **DISMISSED**.

**SO ORDERED.**